proceeding. Declaratory judgment actions obviously do not fit that description.

Because the petitioner never "elect[ed]" not to get the consent of a parent or a guardian to seek an abortion, the court did not have jurisdiction to entertain her request for judicial bypass under § 71-6903(2). I realize that this conclusion means that none of the statutory exceptions apply and that under § 71-6902, the petitioner is prohibited from obtaining an abortion. An absolute ban on the petitioner's right to seek an abortion obviously raises constitutional concerns. But the petitioner did not challenge the statutes as unconstitutional.

McCormack, J., joins in this dissent.

––––––––––

In re Guardianship of Brydon P., a child under 18 years of age.
Silvija P., appellee and cross-appellant, v. Eric L., intervenor-appellant and cross-appellee.
___ N.W.2d ___

Filed October 11, 2013.    No. S-12-1065.

1. **Judgments: Appeal and Error.** An appellate court independently reviews questions of law decided by a lower court.
2. **Attorney Fees: Appeal and Error.** A party may recover attorney fees and expenses in a civil action only when a statute permits recovery or when the Nebraska Supreme Court has recognized and accepted a uniform course of procedure for allowing attorney fees.
3. ____: ____. When attorney fees are authorized, the trial court exercises its discretion in setting the amount of the fee, which ruling an appellate court will not disturb on appeal unless the court abused its discretion.
4. **Attorney Fees.** Whether attorney fees are authorized by statute or by our recognition of a uniform course of procedure presents a question of law.
5. **Statutes: Judicial Construction: Legislature: Presumptions: Intent.** When an appellate court judicially construes a statute and that construction fails to evoke an amendment, the court presumes that the Legislature has acquiesced in its determination of the Legislature's intent.
6. **Guardians and Conservators: Minors: Attorney Fees.** When a court determines that a petitioner seeks a guardianship appointment for a minor in good faith and that the guardianship is in the minor's best interests, the court is statutorily authorized to assess a successful petitioner's reasonable costs, including attorney fees, against the minor's estate, if an estate exists. In such cases, the

authorizing statute for the assessment is Neb. Rev. Stat. § 30-2613(1)(b) (Cum. Supp. 2012).

7. ____: ____: ____. Under Nebraska's guardianship statutes for minors, a county court is not authorized to assess attorney fees against another party.

8. **Courts: Jurisdiction: Equity.** Although county courts lack general equity jurisdiction, they may apply equitable principles to matters that are within their exclusive jurisdiction.

9. **Actions: Parent and Child: Child Custody: Visitation: Standing.** In the context of a court action in which a nonparent seeks custody or visitation with the child, in loco parentis is a standing doctrine. Its application depends upon the circumstances in existence when the nonparent claims a child's best interests lie in allowing him or her to exercise parental rights.

10. **Parent and Child.** Once a person alleged to be in loco parentis no longer discharges all duties incident to the parental relationship, the person is no longer in loco parentis. Termination of the in loco parentis relationship also terminates the corresponding rights and responsibilities afforded thereby.

11. **Parent and Child: Guardians and Conservators: Minors: Child Custody: Standing.** Because the in loco parentis doctrine is transitory, whether a person seeking guardianship of a minor should have standing to maintain custody if the minor's biological parent ever seeks custody in the future is an issue that cannot be decided in advance of any dispute.

Appeal from the County Court for Sarpy County: Todd J. Hutton, Judge. Affirmed in part, and in part reversed and remanded for further proceedings on the issue of fees.

Molly M. Blazek, of Law Office of Molly M. Blazek, for intervenor-appellant.

Amy Sherman and William D. Gilner, of Sherman & Gilner, P.C., L.L.O., for appellee.

Heavican, C.J., Wright, Connolly, Stephan, McCormack, Miller-Lerman, and Cassel, JJ.

Connolly, J.

## SUMMARY

After Brydon P.'s mother died, the county court appointed the appellee, Silvija P., to be his permanent guardian. Silvija is Brydon's maternal grandmother. The appellant, Eric L., is Brydon's adjudicated father. The court allowed Eric to intervene. Although it appointed Silvija as Brydon's permanent guardian, it rejected her request for permanent in loco parentis

status. The court awarded Silvija attorney fees and assessed them equally to Brydon's estate and Eric.

In Eric's appeal, we are asked to decide whether, in a guardianship proceeding, a county court can assess a petitioner's attorney fees against another party. In Silvija's cross-appeal, the issue is whether a court can confer permanent in loco parentis status to a party. We conclude that in a guardianship proceeding for a minor, a court cannot assess a petitioner's costs against another party. Nor does the record show that the court awarded fees under Neb. Rev. Stat. § 25-824 (Reissue 2008). We therefore reverse that part of the court's order that assessed Silvija's attorney fees against Eric and remand the cause for further proceedings. But we affirm the court's determination that it could not confer permanent in loco parentis status to Silvija.

## BACKGROUND

Brydon was born in 1999. Eric and Brydon's mother, Nicole L., never married, and Eric does not have a familial relationship with Brydon. But he has paid court-ordered child support of $201 per month for Brydon since 2000.

Silvija provided financial support and childcare for Brydon until Nicole married in 2010. Silvija continued to see Brydon at least weekly after Nicole married.

In September 2011, Nicole and her husband were severely injured in a vehicle accident and they were both hospitalized. A few days after the accident, Silvija petitioned for an emergency, temporary guardianship of Brydon.

Nicole died on October 9, 2011. She had not designated a guardian for Brydon in a will. After Eric received notice of Silvija's guardianship request, he asked to intervene and for therapeutic visitation and the appointment of a guardian ad litem to represent Brydon's interests. Therapeutic visitation referred to an opportunity for Eric to establish a relationship with Brydon.

The court allowed Eric to intervene and appointed a guardian ad litem for Brydon. The court ordered Brydon and Eric to be evaluated by a child therapist to determine whether their introduction should occur and, if so, how to proceed. At a

February 2012 status hearing, the court continued the temporary guardianship and permitted therapeutic visits if the therapist and guardian ad litem approved them.

In June 2012, Silvija filed an "Amended Petition for Adoption or in the Alternative for In Loco Parentis Status and Custody or in the Alternative for Guardianship." Silvija alleged that Eric had not sought any relief since the court had allowed him to intervene and that he had never met Brydon. She asked the court to find that Eric had forfeited his parental rights and that it was in Brydon's best interests to terminate Eric's rights and to allow Silvija to adopt him. Silvija requested that the court alternatively find that she stood in loco parentis to Brydon and grant her sole legal custody and control of him, and "terminate the guardianship having found her to be [Brydon's] parent." As a third alternative, Silvija requested appointment as Brydon's permanent guardian.

In July 2012, the court issued an order rejecting Silvija's request for adoption because she had not complied with the statutory requirements or paid the filing fee. The court accepted the amended petition only to consider her requests for alternative relief: a finding that she stood in loco parentis to Brydon or that she should be his permanent guardian. It also appointed an attorney for Brydon. In his answer, Eric responded that he had diligently participated with the therapist and attempted to make contact with Brydon and provide care.

In August 2012, Eric did not appear for a deposition. The record contains e-mails between the attorneys that show when the first therapeutic visit was scheduled between Eric and Brydon, Silvija and Brydon arrived at the therapist's office early. When Brydon saw Eric outside the building, he did not want to meet him. After Brydon's court-appointed attorney informed Eric that Brydon did not want to meet him, Eric decided not to contest the guardianship. On the morning of the scheduled deposition, Eric's attorney e-mailed Silvija's attorney that he would not appear. She stated that Eric would withdraw his petition and not contest the guardianship if the parties agreed to make his contact information available to Brydon for a future contact if Brydon changed his mind.

Eric did not appear at the trial on Silvija's amended petition, but his attorney did. The parties stipulated that the court should appoint Silvija as Brydon's permanent guardian. But they disputed the legality of her request for in loco parentis status. In addition, they disputed whether the court had authority to award Silvija attorney fees. The court continued the temporary guardianship, gave the parties an opportunity to submit briefs, and took the matter under advisement.

The court appointed Silvija to be Brydon's permanent guardian. In a separate order, it addressed Silvija's request for in loco parentis status, custody, and fees. The court found that Eric had paid his child support but had not established a familial relationship with Brydon and had never sought custody or visitation before the guardianship proceeding. But the court stated that Silvija's argument—i.e., Eric's parental rights should be terminated—presumed that he was resisting the guardianship, which was not the case. The court concluded that it could decide the guardianship issues without deciding whether Eric had forfeited his parental rights. It denied Silvija's request "to be declared in loco parentis and thereby obtain sole care, custody and control of the minor child over the objection of his natural father." It stated that only the issue of guardianship was presented because there was no pending custody dispute.

The court concluded that in cases involving minor children, as distinguished from incapacitated persons, Nebraska's statutes do not authorize an assessment of fees for a court-appointed attorney or guardian ad litem. But under *In re Guardianship & Conservatorship of Donley* (*Donley*),[1] the court concluded that such costs are compensable from the protected person's estate. The court concluded that like the statute we relied on in *Donley*, Neb. Rev. Stat. § 30-2613(1)(b) (Cum. Supp. 2012) authorizes a guardian to use a ward's funds for his or her support, care, and education. It concluded that § 30-2613(1)(b) authorized the assessment of costs and fees from the minor's estate.

---

[1] *In re Guardianship & Conservatorship of Donley*, 262 Neb. 282, 631 N.W.2d 839 (2001).

Based on this reasoning, the court awarded fees to Brydon's guardian ad litem, Brydon's attorney, and Silvija's attorney. The court ordered Eric and Brydon's estate to each pay one-half of these fees. The court awarded fees of $8,882.50 to Silvija's attorney, and Eric's share of the fees was $4,441.25.

## ASSIGNMENTS OF ERROR

Eric assigns that the court erred in awarding attorney fees to Silvija's attorney, to be paid by Brydon's estate and Eric. On cross-appeal, Silvija assigns that the court erred in denying her request for in loco parentis status.

## STANDARD OF REVIEW

[1] We independently review questions of law decided by a lower court.[2]

## ANALYSIS

### Attorney Fees in Guardianship Proceedings

Eric argues that the court incorrectly awarded attorney fees for Silvija's attorney because there is no statutory authority or recognized procedure for allowing attorney fees for a petitioner's attorney in a guardianship proceeding. Silvija argues that the award was authorized by § 25-824 and Neb. Rev. Stat. §§ 30-2620 (Cum. Supp. 2012) and 30-2643 (Reissue 2008).

[2-4] We pause here to clarify the nature of the issue because the parties have expressed confusion about our standard or review. A party may recover attorney fees and expenses in a civil action only when a statute permits recovery or when we have recognized and accepted a uniform course of procedure for allowing attorney fees.[3] When attorney fees are authorized, the trial court exercises its discretion in setting the amount of the fee, which ruling we will not disturb on appeal unless the court abused its discretion.[4] But whether attorney fees are

---

[2] *Pinnacle Enters. v. City of Papillion*, ante p. 322, ___ N.W.2d ___ (2013).

[3] *Vlach v. Vlach*, ante p. 141, 835 N.W.2d 72 (2013).

[4] See, *Eicher v. Mid America Fin. Invest. Corp.*, 270 Neb. 370, 702 N.W.2d 792 (2005); *Donley, supra* note 1; *Winter v. Department of Motor Vehicles*, 257 Neb. 28, 594 N.W.2d 642 (1999).

authorized by statute or by our recognition of a uniform course of procedure presents a question of law.[5]

Both parties incorrectly argue that § 30-2643 governs an award of costs and fees in a guardianship proceeding for a minor. Article 26 of the Nebraska Probate Code deals with the protection of minors and persons under a disability. Article 26 has three distinct sections of statutes that apply respectively to (1) a conservatorship proceeding for a person under a disability or a minor,[6] (2) a guardianship proceeding for an incapacitated person,[7] and (3) a guardianship proceeding for a minor.[8] Section 30-2643 authorizes a court to assess costs and fees for a court-appointed person in a conservatorship proceeding. But it does not apply here because it is not a conservatorship proceeding.

In guardianship proceedings, the statutory authorization for an assessment of fees and costs is inconsistent. In a guardianship proceeding for an incapacitated person, § 30-2620.01 authorizes a court to assess and adjust reasonable fees and costs for an attorney, a guardian ad litem, a physician, and a visitor "appointed by the court for the person alleged to be incapacitated." The court may assess fees and costs against the estate of the person who is the subject of the proceeding, if the person has an estate; a petitioner; or in some cases, the county.[9] But in a guardianship proceeding for a minor,[10] the court correctly concluded that the probate statutes authorized a court only to *appoint* an attorney and guardian ad litem for a minor whose interests may be inadequately represented.[11]

---

[5] See, *Donley, supra* note 1; *Winter, supra* note 4.

[6] Neb. Rev. Stat. §§ 30-2630 to 30-2661 (Reissue 2008 & Cum. Supp. 2012).

[7] Neb. Rev. Stat. §§ 30-2617 to 30-2629 (Reissue 2008 & Cum. Supp. 2012).

[8] Neb. Rev. Stat. §§ 30-2605 to 30-2616 (Reissue 2008 & Cum. Supp. 2012).

[9] See, § 30-2620.01; *In re Guardianship of Suezanne P.*, 6 Neb. App. 785, 578 N.W.2d 64 (1998).

[10] See §§ 30-2605 to 30-2616.

[11] See, Neb. Rev. Stat. § 30-2222(4) (Reissue 2008); § 30-2611(d).

No statute explicitly authorizes a court to assess the fees and costs of appointed persons against the ward's estate, a petitioner, or the county.

Similarly, none of the statutes in article 26 regarding conservatorships and guardianships explicitly authorize a court to assess a petitioner's attorney fees against the estate. For conservatorship and guardianship cases, however, we have recognized a course of procedure for assessing a successful petitioner's costs against the estate.

In *Donley*,[12] we concluded that public policy demanded compensation for a petitioner's costs in initiating a guardianship or conservatorship proceeding in good faith for the benefit of a person alleged to be in need of protection. We reasoned that in these proceedings, the petitioners are usually acting on behalf of persons who are unable to take actions to protect themselves and often unable to give informed consent to the action. We further reasoned that for persons who are in need of protection, the State and society have a strong interest in placing them and their estates under a court's supervision. And this protection is dependent upon the ability of someone to initiate a proceeding on behalf of the person in need.

We held that when a court determines that a guardianship or conservatorship appointment is necessary for a person alleged to be in need of protection, the reasonable costs of initiating a good faith petition, including attorney fees, constitute necessary expenditures for the person's support or benefit, which costs may be assessed against the person's estate. Moreover, in conservatorship cases, we held that this assessment is statutorily authorized by § 30-2654(a)(2), which allows a conservator "to expend or distribute sums [from the estate] reasonably necessary for the support, education, care or benefit of the protected person."

Under the guardianship statutes pertaining to minors, § 30-2613(1)(b) permits a guardian to receive money payable to a ward and spend these funds for the ward's support, care, and education. The court correctly determined that

---

[12] *Donley, supra* note 1.

§ 30-2613(1)(b) mirrors § 30-2654(a)(2), the statute that we construed in *Donley*.

[5] We decided *Donley* in 2001, and the Legislature has not amended any statutes in article 26 in response to *Donley*. When an appellate court judicially construes a statute and that construction fails to evoke an amendment, we presume that the Legislature has acquiesced in our determination of the Legislature's intent.[13] We conclude that our reasoning in *Donley* applies here also.

[6] We hold that when a court determines that a petitioner seeks a guardianship appointment for a minor in good faith and that the guardianship is in the minor's best interests, the court is statutorily authorized to assess a successful petitioner's reasonable costs, including attorney fees, against the minor's estate, if an estate exists. In such cases, the authorizing statute for the assessment is § 30-2613(1)(b). A court may also assess the minor's attorney fees and guardian ad litem fees against his or her estate when the court has determined that these appointments are necessary to ensure that the minor's interests are adequately represented.

But *Donley* did not authorize an assessment of a successful petitioner's costs against another party. Permitting a court to assess a petitioner's costs against other parties could inhibit them from intervening or objecting. And in a guardianship proceeding for a minor, a county court must also hear from others who may have rights at stake or who have genuine concerns about the minor's best interests. Nor is an assessment against other parties consistent with § 30-2613(1)(b)'s authorization for a guardian to spend funds from a ward's estate for the ward's benefit.

[7] Outside of § 30-2613(1)(b), no statute or recognized course of procedure authorizes fees or costs to be assessed against anyone in a guardianship proceeding for a minor. We conclude that the court erred in extending our reasoning in *Donley* to other parties. Under Nebraska's guardianship

---

[13] See *Durre v. Wilkinson Development*, 285 Neb. 880, 830 N.W.2d 72 (2013).

statutes for minors, a county court is not authorized to assess attorney fees against another party.

Alternatively, Silvija relies on *In re Guardianship of Bremer*.[14] There, after an elderly ward died, the guardian filed his final accounting and asked to be discharged. One of the ward's children objected and asked the court to assess surcharges against the guardian for his alleged breaches of fiduciary duties while he was the conservator. The guardian successfully defended his actions, but the court disallowed attorney fees because the defense was personal to the guardian.

We reversed. We concluded that because the guardian had been the conservator, he was acting as a special conservator for the estate, and that § 30-2643 authorized an assessment of his fees. We further stated that even apart from § 30-2643, a court may allow a guardian attorney fees necessarily incurred in preparing a final account if he successfully defends it against objectors. We reasoned that "[t]o make a fiduciary personally responsible for all attorney fees reasonably incurred in the successful defense of his actions as fiduciary would impose an unconscionable burden on fiduciary service without justification."[15]

*In re Guardianship of Bremer* does not apply here. Section 30-2643 applied to that guardianship proceeding only because the guardian was also acting as a special conservator. Moreover, Silvija did not incur attorney fees because she was defending her actions as a fiduciary. The court had not appointed her when she incurred these fees. And even if she were entitled to attorney fees under *In re Guardianship of Bremer*, we held that the attorney fees were to be assessed against the ward's estate. So this decision does not authorize an assessment against other parties even if it were factually on point.

Finally, Silvija argues that she is entitled to attorney fees under § 25-824, even though she did not claim that Eric's petition to intervene was frivolous. Eric correctly contends that Neb. Rev. Stat. § 25-824.01 (Reissue 2008) requires a

---

[14] *In re Guardianship of Bremer*, 209 Neb. 267, 307 N.W.2d 504 (1981).

[15] *Id.* at 275, 307 N.W.2d at 509.

court to specifically state the reason for an award of attorney fees under § 25-824, and the court did not do this. But Silvija argues that because Eric failed to appear at his deposition and at trial, the court could have concluded that he had acted in bad faith. She argues that the court's failure to make specific findings about this conduct is only a reason to remand the cause.

We disagree. Silvija submitted an affidavit with her attorney fees listed. The court awarded the exact amount of attorney fees that Silvija requested, and she did not request fees under § 25-824. This argument is without merit. We conclude that the court erred in assessing Silvija's attorney fees against Eric.

But we conclude that the issue must be remanded to the court for further proceedings. As stated, the court awarded fees of $8,882.50 to Silvija's attorney. It incorrectly assessed $4,441.25 of these fees against Eric. On remand, the court must determine whether to assess all or any part of the incorrectly assessed fess against Brydon's estate. In doing so, the court should consider the usual factors for determining reasonable attorney fees, which we set out in *Donley*. In addition, of course, under § 30-2613(1)(b), the court must consider whether a further assessment of costs against Brydon's estate would be detrimental to his long-term interests.

## In Loco Parentis Doctrine

On cross-appeal, Silvija argues that the county court had jurisdiction to grant her request for in loco parentis status and that it erred in failing to grant this request. She relies on changes to jurisdictional statutes that give county courts concurrent jurisdiction over domestic relations cases. But Eric had not commenced a custody proceeding, and he stipulated to her appointment as Brydon's guardian. So even if a court can recognize a petitioner's in loco parentis status in some guardianship cases to contest a natural parent's request for custody—an issue we do not decide—this guardianship proceeding did not involve a custody dispute. We conclude that a county court's jurisdiction to resolve custody disputes was irrelevant to the court's authority to act here.

Eric argues that because the county court lacks equity jurisdiction, it could not grant Silvija's request for in loco parentis status. He relies on our explanation in *Latham v. Schwerdtfeger*[16] that the in loco parentis doctrine is a common-law doctrine. We did not explicitly state in *Latham* that in loco parentis is an equitable remedy or doctrine, but other courts have done so, including one of the courts that we cited with approval in *Latham*.[17] But even if recognizing a party's in loco parentis relationship to a child is an equitable doctrine, that conclusion would not mean that the court lacked jurisdiction to do so here.

[8] Although county courts lack general equity jurisdiction, they may apply equitable principles to matters that are within their exclusive jurisdiction.[18] Under Neb. Rev. Stat. § 24-517(2) (Cum. Supp. 2012), unless a juvenile court has acquired jurisdiction over a child in need of a guardian, a county court has exclusive jurisdiction over all matters relating to a guardianship. So the issue here is not whether the court has jurisdiction to recognize a petitioner's in loco parentis status in a guardianship proceeding. The issue is whether a court can confer permanent in loco parentis status.

Silvija clearly did not need the court to recognize her in loco parentis relationship with Brydon for her to have standing to seek appointment as his guardian. And the court's appointment of her as Brydon's guardian forestalled any need for the court to consider whether it should recognize her in loco parentis status. Under the court's order, she obviously has legal and physical custody. Instead, Silvija is seeking permanent parental status under the doctrine. The court correctly concluded that it cannot confer permanent in loco parentis status.

In *Latham*,[19] we applied the in loco parentis doctrine in a custody dispute involving two unmarried domestic partners

---

[16] *Latham v. Schwerdtfeger*, 282 Neb. 121, 802 N.W.2d 66 (2011).

[17] See *id*., citing *Custody of H.S.H.-K.*, 193 Wis. 2d 649, 533 N.W.2d 419 (1995).

[18] See *Washington v. Conley*, 273 Neb. 908, 734 N.W.2d 306 (2007).

[19] *Latham, supra* note 16.

who had separated. We held that the plaintiff had standing under the doctrine to seek custody and visitation of the child born to the other partner during the parties' relationship. We explained that in loco parentis is a common-law doctrine that gives standing to a nonparent to exercise the rights of a natural parent when the evidence shows that the nonparent's exercise of such rights is in the child's best interests. The evidence must show that the nonparent has established an intimate parent-child relationship and assumed the obligations of that relationship. We discussed earlier cases in which we had applied the doctrine, including a case affirming an award of visitation to a child's ex-stepparent.[20] We quoted with approval another court's explanation of the doctrine:

> "[W]hile it is presumed that a child's best interest is served by maintaining the family's privacy and autonomy, that presumption must give way where the child has established strong psychological bonds with a person who, although not a biological parent, has lived with the child and provided care, nurture, and affection, assuming in the child's eye a stature like that of a parent. Where such a relationship is shown, our courts recognize that the child's best interest requires that *the third party be granted standing* so as to have the opportunity to litigate fully the issue of whether that relationship should be maintained even over a natural parent's objection."[21]

We explained that when "viewed in the context of standing principles in general, [the doctrine's] purpose is to ensure that actions are brought only by those with a genuine substantial interest."[22] We concluded that the nonparent had standing to seek custody and visitation, and we reversed the district court's summary judgment for the parent because the parties were not coparenting at the time of the hearing. We remanded the cause with instructions for the court to focus on the child's best interests in maintaining the relationship with the

---

[20] See *Hickenbottom v. Hickenbottom*, 239 Neb. 579, 477 N.W.2d 8 (1991).

[21] *Latham, supra* note 16, 282 Neb. at 130, 802 N.W.2d at 74 (emphasis supplied).

[22] *Id.*

nonparent and on the nature of that relationship after the parties' separation.

[9,10] Our discussion in *Latham* shows that in the context of a court action in which a nonparent seeks custody or visitation with the child, in loco parentis is a standing doctrine. Its application depends upon the circumstances in existence when the nonparent claims a child's best interests lie in allowing him or her to exercise parental rights. But we have specifically stated that "[o]nce the person alleged to be in loco parentis no longer discharges all duties incident to the parental relationship, the person is no longer in loco parentis. . . . Termination of the in loco parentis relationship also terminates the corresponding rights and responsibilities afforded thereby."[23] For example, we have held that a court could not order a child's ex-stepparent to pay child support after he was no longer discharging the daily duties of a parent.[24]

[11] Presumably, in Silvija's role as Brydon's guardian, she will continue to perform the parental obligations that she had assumed before the appointment. But because the in loco parentis doctrine is transitory, whether a person seeking guardianship of a minor should have standing to maintain custody if the minor's biological parent ever seeks custody in the future is an issue that cannot be decided in advance of any dispute. We conclude that the court did not err in rejecting Silvija's request for permanent parental status.

## CONCLUSION

We conclude that the court correctly denied Silvija's request for permanent parental status under the doctrine of in loco parentis.

But we conclude that the court erred in assessing Silvija's attorney fees against Eric. In a guardianship proceeding for a minor, no statute or recognized course of action permits a court to assess a petitioner's costs against another party. We reverse that portion of the court's order. We remand

---

[23] *In re Interest of Destiny S.*, 263 Neb. 255, 261, 639 N.W.2d 400, 406 (2002).

[24] See *Weinand v. Weinand*, 260 Neb. 146, 616 N.W.2d 1 (2000).

the cause, however, for the court to determine whether to assess all or any part of the incorrectly assessed fess against Brydon's estate.

Affirmed in part, and in part reversed and remanded for further proceedings on the issue of fees.

---

David J. Klingelhoefer, as Successor Trustee of the Constance K. Klingelhoefer Revocable Trust and as manager of Constance Klingelhoefer, L.L.C., appellee, v. Kerry L. Monif et al., appellants.

___ N.W.2d ___

Filed October 11, 2013.    No. S-12-1117.

1. **Jurisdiction: Appeal and Error.** The question of jurisdiction is a question of law, upon which an appellate court reaches a conclusion independent of the trial court.
2. **Courts: Appeal and Error.** After receiving a mandate, a trial court is without power to affect rights and duties outside the scope of the remand from an appellate court.
3. **Courts: Judgments: Appeal and Error.** A district court has an unqualified duty to follow the mandate issued by an appellate court and must enter judgment in conformity with the opinion and judgment of the appellate court.
4. ____: ____: ____. The judgment of the appellate court is a final judgment in the cause, and the entry thereof in the lower court is a purely ministerial act.
5. **Judgments.** After a mandate is issued, no modification of the judgment so directed can be made, nor may any provision be engrafted on or taken from it.
6. ____. A mandate is conclusive on the parties, and no judgment or order different from, or in addition to, the mandate can have any effect.
7. **Attorney Fees: Appeal and Error.** An appellate court may award attorney fees on appeal regardless of whether they were requested or ordered in the trial court.
8. **Attorney Fees: Words and Phrases.** In the context of Neb. Rev. Stat. § 25-824 (Reissue 2008), a frivolous action is one in which a litigant asserts a legal position so wholly without merit as to be ridiculous.
9. **Actions.** Any doubt whether a legal position is frivolous or taken in bad faith should be resolved for the party whose legal position is in question.

Appeal from the District Court for Buffalo County: John P. Icenogle, Judge. Vacated and dismissed.

David J. Lanphier, of Broom, Clarkson, Lanphier & Yamamoto, for appellants.