IN THE NEBRASKA COURT OF APPEALS

**MEMORANDUM OPINION AND JUDGMENT ON APPEAL**
**(Memorandum Web Opinion)**

MILLER V. MONEY

NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).

DAMION R. MILLER, APPELLEE AND CROSS-APPELLEE,

V.

AMY M. MONEY, APPELLEE AND CROSS-APPELLANT, AND RACHEL COOKE, APPELLANT.

Filed March 22, 2016.    No. A-15-745.

Appeal from the District Court for Douglas County: SHELLY R. STRATMAN, Judge. Reversed and remanded with directions.

Jamie C. Cooper, of Cooper Law, L.L.C., for appellant.

Amy M. Money, pro se.

No appearance for appellee Damion R. Miller.

INBODY, PIRTLE, and RIEDMANN, Judges.

PIRTLE, Judge.

## FACTUAL BACKGROUND

Rachel Cooke appeals the order of the district court for Douglas County, in which the court denied her complaint to intervene, and ordered placement of the juvenile, Violet Money, with Damion R. Miller, the biological father. For the reasons that follow, we reverse, and remand with directions.

## PROCEDURAL BACKGROUND

Violet is the minor child of Miller and Amy M. Money, an unmarried couple. Shortly after Violet's birth in December 2012, Money voluntarily placed Violet with Cooke, a family friend. Miller completed a DNA test in March 2013 which concluded he was Violet's father. After

- 1 -

receiving the DNA results he began visiting Violet on weekends while she resided with Cooke. In March 2015, the Cooke family moved to Florida and Violet moved with them.

Miller filed a complaint to establish paternity against Money on April 24, 2015, seeking physical and legal custody of the minor child. On April 28, Miller filed a motion for an ex parte order. The motion alleged Miller exercised parenting time with Violet every weekend and that Cooke "thwarted" Miller's attempts to spend more time with Violet. He alleged Cooke had recently moved to Florida with Violet without the permission or consent of Miller or Money, and without informing him of her intention to relocate permanently. He alleged that he feared for Violet's safety, and feared that he would not see Violet again if she was not returned to Nebraska. Miller sought legal and physical custody of Violet, an order for Cooke to return Violet to Nebraska, and a warrant for Cooke's arrest should she fail to abide by the terms of the order. The district court denied Miller's motion for an ex parte order.

On May 1, Miller filed a motion for a temporary order requesting, among other things, the return of Violet to the State of Nebraska. On May 8, Cooke filed a complaint to intervene alleging she stood in loco parentis over Violet. Cooke alleged that she was given placement of Violet when she was six days old, and Violet continued to reside with her. Cooke alleged that she was Violet's primary caretaker and provided for the child's day-to-day needs, including medical care, housing, and food. Cooke also alleged she and her husband provided for Violet emotionally, and Violet views Cooke and her husband as her parents, and Cooke's children as her siblings.

A hearing on Cooke's complaint to intervene was held on May 18, 2015. Cooke's counsel asserted Cooke had a direct and legal interest in the custody matter as she had maintained placement of Violet since birth and stood in loco parentis over Violet. Money, appearing without a lawyer, did not object to Cooke's complaint to intervene. Miller's counsel objected stating that she had no legal right to Violet because she was not biologically related to the child. The court took the matter under advisement, but ordered Violet to be returned to Nebraska no later than June 7, 2015. The court encouraged the parties to work together to maintain regular telephone or Skype contact "with Ms. Cooke and her children just due to the nature of Violet being in that home for the last almost three years."

On July 17, 2015, the court denied Cooke's complaint to intervene. Cooke timely appealed. Miller did not file a brief, and Money, as appellee, filed a pro se "cross-brief" wherein she supported Cooke's proposed intervention.

## ASSIGNMENTS OF ERROR

Cooke asserts the district court abused its discretion in denying her complaint to intervene.

## STANDARD OF REVIEW

Whether a party has the right to intervene in a proceeding is question of law. *Jeffrey B. v. Amy L.,* 283 Neb. 940, 814 N.W.2d 737 (2012).When reviewing questions of law, an appellate court has an obligation to resolve the questions independently of the conclusion reached by the trial court. *Id.*

ANALYSIS

Cooke asserts the district court erred in denying her petition to intervene. Under Neb. Rev. Stat. § 25-328 (Reissue 2008):

> Any person who has or claims an interest in the matter in litigation, in the success of either of the parties to an action, or against both, in any action pending or to be brought in any of the courts of the State of Nebraska, may become a party to an action between any other persons or corporations, either by joining the plaintiff in claiming what is sought by the complaint, or by uniting with the defendants in resisting the claim of the plaintiff, or by demanding anything adversely to both the plaintiff and defendant, either before or after the issue has been joined in the action, and before the trial commences.

Cooke asserts she should have been allowed to intervene in the paternity action involving Violet, even though she does not share a biological link to her. She alleges she has a direct legal interest in the custody proceedings as she stands in loco parentis to Violet.

In *Latham v. Schwerdtfeger,* 282 Neb. 121, 802 N.W.2d 66 (2011), the Nebraska Supreme Court applied the in loco parentis doctrine in a custody dispute involving unmarried domestic partners who had separated. The plaintiff was found to have standing under the doctrine to seek custody and visitation of the child born to the other partner during the parties' relationship. The court explained that in loco parentis is a common-law doctrine that gives standing to a nonparent to exercise the rights of a natural parent when the evidence shows that the nonparent's exercise of such rights is in the child's best interests.

This case does not involve standing, but rather the right of a nonparent to intervene in an existing action. However, the threshold for determining whether a person stands in loco parentis is the same. A person standing in loco parentis to a child is one who has put himself or herself in the situation of a lawful parent by assuming the obligations incident to the parental relationship, without going through the formalities necessary to a legal adoption, and the rights, duties, and liabilities of such person are the same as those of the lawful parent. *In re Interest of Destiny S.,* 263 Neb. 55, 639 N.W.2d 400 (2002). The assumption of the relationship is a question of intention, which may be shown by the acts and declarations of the person alleged to stand in that relation. *Hickenbottom v. Hickenbottom,* 239 Neb. 579, 477 N.W. 2d 8 (1991).

It is clear from the pleadings that Cooke has placed herself in the position of a lawful parent. While the care she provided for Violet was never formalized as a guardianship, Miller and Money both allowed Cooke to discharge the duties of a parent for over two years before either party sought custody of Violet. Miller's biological relationship to Violet was confirmed in 2013, yet he did not make any attempt to exercise his parental rights until it became clear that Cooke intended to relocate to Florida, with Violet, in 2015. Cooke assumed the obligation of caring for Violet's physical and emotional needs on a daily basis when Violet was just six days old. Cooke provided food, shelter, medical care, and emotional support, demonstrating her intention to stand in loco parentis to Violet. The remaining question is whether, as a non-biological custodian, her in loco parentis status affords her the right to intervene in a paternity action affecting the minor child.

The Nebraska appellate courts have recognized that certain rights and responsibilities may arise where a husband elects to stand in loco parentis to his wife's child. *In re Interest of Sarah H.,*

- 3 -

21 Neb. App. 441, 838 N.W.2d 389 (2013). In *In re Interest of Sarah H.,* this court affirmed the juvenile court's finding that the child's ex-stepfather, Brian, was allowed to intervene as he had acted in the role of father for the child for a significant portion of the child's life. The juvenile court had found that there was a clear showing that Brian possessed an interest as a legal parent "'under the doctrine of parens patriae.'" *Id*. at 451, 838 N.W.2d at 398. Thus, there is a precedent for allowing intervention of a non-biological custodian who stands *in loco parentis* to a child. Like Brian, Cooke has acted in the role of a parent to Violet for nearly her entire life, and continued to do so at the time Miller's action was filed.

The in loco parentis doctrine gives standing to a nonparent to exercise the rights of a natural parent when the evidence shows that the nonparent's exercise of such rights is in the child's best interests. The Nebraska Supreme Court has stated:

[While] it is presumed that a child's best interest is served by maintaining the family's privacy and autonomy, that presumption must give way where the child has established strong psychological bonds with a person who, although not a biological parent, has lived with the child and provided care, nurture, and affection, assuming in the child's eye a statute like that of a parent. Where such a relationship is shown, our courts recognize that the child's best interest requires that *the third party be granted standing* so as to have the opportunity to litigate fully the issue of whether the relationship should be maintained even over a natural parent's objection.

*In re Guardianship of Brydon P.,* 286 Neb. 661, 838 N.W.2d 262 (emphasis in original).

The decision of the district court in this case denied Cooke the right to be heard and to participate in all proceedings affecting Violet's welfare and best interests, although she has assumed this duty of care for the majority of Violet's life. Further, the district court encouraged the parties to maintain regular telephone or Skype contact with Cooke and her children "just due to the nature of Violet having been in that home for the last almost three years." The court clearly recognized a psychological bond had been established and found it would be in Violet's best interests to maintain the relationship she had built with Cooke and her family. In light of this fact, we find the district court erred in denying Cooke's complaint to intervene.

## CONCLUSION

For the reasons discussed hereinabove, we conclude that the district court erred in denying Cooke's complaint to intervene. We reverse, and remand the cause with directions to grant Cooke leave to intervene in this matter.

REVERSED AND REMANDED WITH DIRECTIONS.