Nebraska Supreme Court Online Library
www.nebraska.gov/apps-courts-epub/
03/16/2018 08:13 AM CDT

Hannah Whilde, appellee, v.
Margaret Whilde, appellant.

___ N.W.2d ___

Filed December 22, 2017.    No. S-17-045.

1. **Child Custody: Appeal and Error.** Child custody determinations are matters initially entrusted to the discretion of the trial court, and although reviewed de novo on the record, the trial court's determination will normally be affirmed absent an abuse of discretion.

2. **Parent and Child.** During a period in which an individual stands in loco parentis to a child, he or she has put himself or herself in the situation of a lawful parent by assuming the obligations incident to the parental relationship, without going through the formalities necessary to a legal adoption, and the rights, duties, and liabilities of such person are the same as those of the lawful parent.

3. ____. Because in loco parentis status is transitory, once the person alleged to be in loco parentis no longer discharges all duties incident to the parental relationship, the person is no longer in loco parentis. Termination of the in loco parentis relationship also terminates the corresponding rights and responsibilities afforded thereby.

4. **Child Custody: Modification of Decree: Proof.** Ordinarily, custody of a minor child will not be modified unless there has been a material change in circumstances showing that the custodial parent is unfit or that the best interests of the child require such action. First, the party seeking modification must show a material change in circumstances, occurring after the entry of the previous custody order and affecting the best interests of the child. Next, the party seeking modification must prove that changing the child's custody is in the child's best interests.

Appeal from the District Court for Otoe County: David K. Arterburn, Judge. Affirmed.

Anthony W. Liakos, of Govier, Katskee, Suing & Maxell, P.C., L.L.O., for appellant.

Julie E. Bear, of Reinsch, Slattery, Bear & Minahan, P.C., L.L.O., for appellee.

Heavican, C.J., Miller-Lerman, Cassel, and Stacy, JJ., and Riedmann, Judge.

Miller-Lerman, J.

## NATURE OF CASE

Margaret Whilde appeals the order of the district court for Otoe County, Nebraska, which modified a prior child custody order filed by a Texas court, awarded sole legal and physical custody of the child to Hannah Whilde, and ordered that Margaret be granted no further rights of custody or visitation with regard to the child. We affirm the district court's order.

## STATEMENT OF FACTS

Margaret and Hannah met in 1999 and became involved in a romantic relationship during which they lived together. They lived in Mexico when they first met, but they later moved to Lincoln, Nebraska, for a time before they moved to Austin, Texas, in 2003. After moving to Texas, both Margaret and Hannah had their last names legally changed to "Whilde." The parties disputed whether they had a commitment ceremony soon after they met in 1999 and whether they considered themselves to be married, but the record indicates that the two had never been legally married.

In January 2010, Hannah gave birth to a baby girl. The child had been conceived by artificial insemination, and any parental rights of the biological father were terminated by a court in Texas. Margaret and Hannah were still in a relationship and living together at the time the child was born. Although the parties dispute whether there was an intent on the part of either Margaret or Hannah for Margaret to be considered a parent to the child, and although Margaret testified that she planned to adopt the child, Margaret conceded that she had not formally adopted the child.

The relationship between Margaret and Hannah began to decline after the child's birth. Although the parties dispute

the reasons and the circumstances surrounding their separation, in November 2011, Hannah moved back to her parents' home in Otoe County and she took the child with her. Soon after Hannah left Texas, Margaret filed an action in the district court for Travis County, Texas, in which she sought to have determined her legal rights with respect to the child. The Texas court entered an initial order in which it determined that Margaret had legal standing to assert rights with respect to the child and set forth certain rights and duties that Margaret and Hannah would share as "joint managing conservators" of the child.

After further proceedings and hearings, the Texas court filed an additional order on September 27, 2012. The order was denominated "Temporary Orders," and in the order, the court appointed Hannah as "Temporary Parent Sole Managing Conservator" and Margaret as "Temporary Non-Parent Possessory Conservator" of the child. The order then set forth certain rights and duties that each party would have during her periods of possession of the child, certain rights and duties that each party would have at all times as conservator, and certain rights that Hannah would have exclusively. The rights that Hannah was granted exclusively included, inter alia, the right to direct the moral and religious training of the child, the right to designate the primary residence of the child without geographic restriction, and the right to represent the child in legal actions and to make other decisions of substantial legal significance concerning the child.

The court then set forth terms for each party's periods of possession of the child. The order provided that Hannah would have possession of the child at all times other than times specified in the order when Margaret would have possession. The order generally provided that Margaret would have possession for one 4-day period each month and that Margaret's period of possession would increase to include certain specified periods after the child reached the age of 3. With regard to support, the order provided that neither party was obligated to pay direct child support to the other and that,

instead, each party would be responsible for expenses that arose during her period of possession. Margaret was ordered to provide health insurance for the child beginning November 24, 2012. The order stated that the temporary orders would "continue in force until the signing of the final order or until further order of this Court." It appears that no further orders were filed by the Texas court until after the present action was filed in Nebraska.

On June 6, 2014, Hannah filed in the district court for Otoe County an application to register the Texas court's September 27, 2012, order pursuant to the Uniform Child Custody Jurisdiction and Enforcement Act, Neb. Rev. Stat. §§ 43-1226 through 43-1266 (Reissue 2016). She requested that the Nebraska court set aside the Texas order and modify the custody of the child in accordance with Nebraska law. Hannah alleged that she and the child had lived in Nebraska City, Nebraska, since November 2011 and that Margaret was currently living in Auburn, Nebraska, and had lived in Nebraska for more than 1 year. Hannah alleged that she was the biological mother of the child and that the biological father had been denied any parental rights by the Texas court. Hannah further alleged that no enforcement action had been taken with regard to the Texas court order since its entry and that no effort had been taken to bring about entry of a final order. Hannah alleged that it would be in the best interests of the child that Hannah be given sole legal and physical custody of the child and that Margaret should have no rights to custody or visitation of the child.

In her response, Margaret admitted much of the allegations in Hannah's complaint, but she requested that the complaint to modify the Texas order be dismissed and, to the extent Hannah requested a suspension of Margaret's visitations rights, that such request be denied.

Margaret moved back to Texas in late June 2014, shortly after Hannah filed this action. It appears that Margaret's contact with the child was minimal thereafter. Hannah presented evidence at the trial in this matter that after Margaret moved

back to Texas, Margaret had experienced significant mental health issues resulting in hospitalization, including time in a long-term psychiatric hospital in New York.

In December 2015, Hannah filed a motion in this action seeking to suspend Margaret's contact with the child because of Margaret's mental health issues. In February 2016, the district court preliminarily ordered that there be no contact between Margaret and the child, pending the court's determination of Hannah's motion. In a March 10, 2016, order, the court provided that pending trial in this matter, Margaret would be allowed 15 minutes each week of supervised contact with the child by telephone or "[S]kype." On March 11, Margaret filed an application for order to show cause, in which she alleged that Hannah had prevented her from exercising the visitation ordered in the March 10 order; Margaret requested an order for Hannah to show cause why she should not be held in contempt for failing to allow the ordered visitation. In an order entered March 21, the court addressed various matters, including the following:

> Visitation issue is further addressed by the Court. Court finds that Defendant [Margaret] has not provided records of her current treatment as previously ordered. Court finds that said records from the New York Psychiatric Institute shall be provided to counsel for Plaintiff [Hannah] on or before April 1, 2016. Fifteen-minute weekly Skype visitation shall recommence on April 6, 2016, at 7:00 p.m[.] Central Time. Weekly Skype visitation shall take place every Wednesday at 7:00 p.m. Central Time for 15 minutes and may be supervised by a person acceptable to Plaintiff. Said supervisor shall have the ability to terminate a Skype visitation if Defendant engages in any inappropriate conversation with the child.

> No order to show cause pursuant to contempt action filed by Defendant will be entered based on the foregoing order and based on Defendant's unavailability to be present to prosecute such a contempt action.

In July 2016, the district court communicated with the Texas court regarding jurisdiction under the Uniform Child Custody Jurisdiction and Enforcement Act. As a result of such communication, the Texas court relinquished its jurisdiction of the case, finding that Nebraska had become the home state of the child. The district court in Nebraska also found that jurisdiction of the case under the act was in Nebraska.

Trial in the matter was held on August 2 and 3, 2016, and the court issued its opinion and order on December 16. This appeal is taken from the December 16 order. In the order, the court set forth much of the history recounted above. The court noted that the parties' testimony regarding their relationship and Margaret's relationship with the child varied widely. The court noted Hannah's testimony to the effect that their relationship began to deteriorate after Hannah became pregnant. Hannah testified that Margaret's behavior became erratic and that she became afraid to leave the child alone with Margaret. Hannah testified that Margaret did not spend significant time with the child and that Hannah was the primary caregiver. Hannah testified that Margaret began to cut Hannah off from contact with others and that eventually Hannah decided she needed to remove herself and the child from what she described as a "dysfunctional environment." Hannah obtained the assistance of her sister to leave Texas and return with the child to Nebraska.

Contrary to Hannah's testimony, Margaret testified that she was actively involved in the child's care and that she provided financial support by working outside the home while Hannah stayed at home with the child. She testified that she had initiated proceedings to adopt the child and that a final hearing had been scheduled for shortly after the day Hannah moved herself and the child out of their home. Margaret testified that she was shocked when she learned that Hannah had moved out with the child. Shortly after they moved, Margaret filed the action in Texas to secure her rights with regard to the child, and she moved to Nebraska in April 2013 to better exercise her rights of visitation.

It appears that the parties generally followed the visitation order after Margaret moved to Nebraska. But Hannah decided to curtail Margaret's visitation after an incident in May 2014, when Hannah asserted that Margaret kept the child beyond her allotted time. Hannah called the police to remove the child from Margaret's home. As a result of the police visit to Margaret's home, Hannah learned that the condition of Margaret's home was such that Hannah did not think it an appropriate place for the child. Hannah presented witness testimony and other evidence to the effect that Margaret maintained a home that was extremely dirty and unsafe for the child. After the May 2014 incident, Hannah filed for and obtained a harassment protection order against Margaret, and she filed the present action to modify custody.

Hannah also presented evidence at the trial regarding Margaret's mental health issues after Margaret returned to Texas in 2014. Margaret generally acknowledged such mental health issues, but she presented evidence to support her contention that she had undergone treatment and at the time of trial was capable of caring for the child.

The district court in its December 16, 2016, order stated that the evidence showed that with regard to financial support, Margaret had provided the majority of support while Hannah and the child lived with her in Texas. However, after Hannah and the child left, Margaret's financial support had been limited to support provided during her visitations in 2013 and 2014, and after Margaret returned to Texas in 2014, she had provided only occasional gifts.

In determining custody issues, the district court first considered the applicability of Texas law and the effect of the September 27, 2012, order entered by the Texas court. The district court determined that because the child and both parties had lived in Nebraska for over 1 year before this action was filed, Nebraska law applied and controlled whatever legal rights the parties might have. Regarding the applicability of the Texas order, the district court stated that by its terms, the order was temporary and was not contemplated to be a final

order. However, the district court determined that the Texas order was the operative order except to the extent modified by the district court.

The court therefore considered the effect of the Texas court's determination that Margaret held the status of a "temporary non-parent possessory conservator." The court noted that there was not a direct counterpart to such status under Nebraska law. However, the court determined that such status under Texas law was most comparable to the concept of an in loco parentis relationship under Nebraska law as set forth in cases such as *Latham v. Schwerdtfeger*, 282 Neb. 121, 802 N.W.2d 66 (2011).

The district court determined that the evidence in this case established that a significant relationship existed between Margaret and the child, from the child's birth in January 2010 until Hannah and the child moved to Nebraska in November 2011. The court therefore acknowledged that an in loco parentis relationship "at one time did exist" between Margaret and the child. The court noted, however, that under Nebraska law, the establishment of an in loco parentis relationship does not forever grant parental rights to a nonbiological and nonadoptive parent and that once a person alleged to be in loco parentis no longer discharges all the duties incident to the parental relationship, the person is no longer in loco parentis.

The court determined that in the present case, the in loco parentis relationship that had once existed between Margaret and the child had ceased in the years after Margaret moved back to Texas in June 2014. The court recognized that in May 2014, Hannah had unilaterally cut off Margaret's access to the child, but the court determined that Hannah had legitimate reasons for doing so. The court noted evidence that "Margaret's mental health quickly deteriorated, resulting in approximately two years of unstable living conditions and repeated hospitalizations." The court recognized that at the time of the trial, Margaret appeared "to have regained much of what she has lost" and that she "was articulate in her presentation and has regained employment and a more stable

living environment." The court stated that the question, however, was whether in the course of those 2 years the in loco parentis relationship had been severed; the court determined that it had.

The court concluded that "the in loco parentis relationship that [Margaret] previously enjoyed has been severed largely through her own failings as a care provider and extended history of mental instability." The court found that the child's best interests would not be served by any further court-ordered contact between Margaret and the child. The court further found that Hannah had established a safe and secure home for the child. The court concluded that a material change of circumstances existed requiring the modification of the Texas court's September 27, 2012, order. The court therefore awarded sole legal and physical custody of the child to Hannah. The court ordered that Margaret was granted no rights of custody and visitation with the child and that she had no further obligation to support the child.

Margaret appeals the district court's December 16, 2016, order.

## ASSIGNMENTS OF ERROR

Margaret claims that the district court erred when it (1) found that her in loco parentis relationship with the child had been severed, (2) found that such relationship had been severed as a result of events that had occurred in Margaret's life, and (3) granted Margaret no rights of custody or visitation with the child. Margaret also claims that the district court abused its discretion when it allegedly suspended contact between Margaret and the child as a discovery sanction.

## STANDARD OF REVIEW

[1] Child custody determinations are matters initially entrusted to the discretion of the trial court, and although reviewed de novo on the record, the trial court's determination will normally be affirmed absent an abuse of discretion. *Windham v. Griffin*, 295 Neb. 279, 887 N.W.2d 710 (2016).

## ANALYSIS

*Court Did Not Suspend*
*Margaret's Visitation as*
*a Discovery Sanction.*

We first address Margaret's claim that the district court abused its discretion because it suspended contact between Margaret and the child as a discovery sanction. Margaret argues that in the order filed March 21, 2016, the court made her continued visitation with the child contingent upon her providing Hannah with copies of her mental health records; she asserts that this order was an inappropriate sanction for her failure to comply with a discovery request. In response, Hannah contends that the court did not limit Margaret's visitation as a discovery sanction but instead did so to protect the child's best interests pending a determination of Margaret's mental health status.

We do not agree with Margaret's characterization of the order, and we reject this assignment of error. As recounted above, Margaret's mental health status became an issue in these proceedings, and in December 2015, Hannah filed a motion seeking to suspend Margaret's contact with the child. In response to Hannah's motion, the district court in February 2016 entered a preliminary order that there be no contact between Margaret and the child, pending the court's determination of Hannah's motion. In a March 10, 2016, order, the court provided that pending trial in this matter, Margaret would be allowed 15 minutes each week of supervised contact with the child by telephone or Skype. Shortly thereafter, Margaret alleged that Hannah had prevented her from exercising the visitation ordered in the March 10 order; Margaret sought to have Hannah held in contempt for failing to allow the ordered visitation.

In the March 21, 2016, order, the court addressed these and other matters. The court noted that Margaret had not provided certain treatment records as had been previously ordered. So the court ordered Margaret to provide the records to Hannah's

counsel on or before April 1. The court went on to order that Margaret's weekly Skype visitations with the child would recommence on April 6 and continue weekly thereafter. The court stated that based in part on "the foregoing order," it would not enter an order to show cause as sought in the contempt action filed by Margaret.

We do not read the order of March 21, 2016, as imposing a sanction on Margaret for her failure to comply with a discovery order. Instead, we read the order as addressing Margaret's failure by setting a specific date—April 1—by which she was ordered to provide the records that were the subject of the prior order. Then, as a separate matter, the court responded to Margaret's request that Hannah be held in contempt for failing to comply with the order regarding Margaret's Skype visitation with the child. The court granted Margaret relief by ordering such visitation to recommence on April 6.

Although the court addressed both the discovery issue and the visitation issue in the same order, we do not read the March 21, 2016, order as connecting the two issues in the manner alleged by Margaret. The court did not suspend Margaret's visitation as a sanction for her failure to comply with the earlier discovery order. Instead, the court set specific dates by which each party would comply with previous orders—Margaret was to comply with the discovery order by April 1, and Hannah was to comply with the visitation order beginning April 6. Rather than suspending Margaret's visitation, the court ordered visitation to resume. Also, although Margaret was ordered to provide the mental health records on a date prior to the date visitation was ordered to resume, the court did not condition the resumption of visitation on Margaret's compliance with the order to provide records.

We do not find that the court suspended Margret's visitation as a discovery sanction, and we therefore find no merit to the claim the court abused its discretion by imposing such a sanction.

*District Court Did Not Err When It Determined*
*That Court-Ordered Visitation With*
*Margaret Was No Longer in*
*the Child's Best Interests.*

Margaret's remaining assignments of error are directed at the district court's determinations regarding her in loco parentis status with respect to the child and its ultimate conclusion that she was no longer entitled to rights of custody and visitation with the child. We find no error in the district court's determinations and conclusions with regard to Margaret's rights of custody and visitation.

We note first that Margaret does not appear to take issue with the district court's conclusion that her legal status as determined in the Texas court's order was comparable to in loco parentis status under Nebraska jurisprudence. We find no error in this determination or in the district court's determination that based on the Texas order and the evidence regarding the time while the child was living in Texas, at one time, Margaret had in loco parentis status with respect to the child.

[2] We have recognized the doctrine of in loco parentis in child custody and visitation cases wherein we have stated that during a period in which an individual stands in loco parentis to a child, he or she has put himself or herself in the situation of a lawful parent by assuming the obligations incident to the parental relationship, without going through the formalities necessary to a legal adoption, and the rights, duties, and liabilities of such person are the same as those of the lawful parent. *Windham v. Griffin*, 295 Neb. 279, 887 N.W.2d 710 (2016); *Latham v. Schwerdtfeger*, 282 Neb. 121, 802 N.W.2d 66 (2011); *Weinand v. Weinand*, 260 Neb. 146, 616 N.W.2d 1 (2000). In the order it filed on September 27, 2012, the Texas court appointed Margaret as "Temporary Non-Parent Possessory Conservator," while it appointed Hannah as "Temporary Parent Sole Managing Conservator." The court set forth certain rights and duties that each party would have during her periods of possession of the child, certain rights

and duties that each party would have at all times as conservator, and certain rights that Hannah would have exclusively. As we read the Texas order, we agree with the district court's conclusion in this case that the rights Margaret was given by the Texas court's order were equivalent to the rights one might be awarded based on in loco parentis status under Nebraska law. By denominating Margaret as a "Non-Parent Possessory Conservator," the Texas court appeared to recognize that although Margaret was not a biological parent to the child and she had not gone through the formalities necessary to legally adopt the child, Margaret had put herself in the situation of a lawful parent by assuming the obligations incident to the parental relationship and that she was therefore entitled to certain rights of "possession" and rights as a "conservator," which rights appear to be similar to rights of custody and visitation under Nebraska law.

In addition to agreeing with the district court's conclusion that the rights Margaret was granted under the Texas order were similar to rights one might be awarded as a result of in loco parentis status under Nebraska law, we also agree with the district court's conclusion, based on evidence provided in the present proceeding, that at the time the Texas order was filed, Margaret had what would be considered an in loco parentis relationship with the child under Nebraska law. Evidence presented at the trial in this proceeding indicates that from the child's birth in January 2010 until the time Hannah and the child left Texas in November 2011, Margaret had assumed obligations with respect to the child that were of the sort that are incident to the parental relationship. Therefore, in the present proceeding in Nebraska, the district court correctly concluded that at one time, Margaret had in loco parentis status with respect to the child.

Margaret does not dispute this finding; instead, Margaret claims that the district court erred when it determined that her in loco parentis status had been severed as a result of her actions and when it concluded that continued custody and visitation with Margaret were not in the child's best interests.

As set forth below, we conclude that the district court did not err in these respects.

Although in past cases we have recognized that in loco parentis status may entitle a party to certain rights of custody and visitation, we have recognized that in loco parentis status is not equivalent to status as a parent and does not entitle a person to all the same rights that a legal parent would enjoy. See *Windham v. Griffin*, 295 Neb. 279, 887 N.W.2d 710 (2016). In *Windham v. Griffin*, we reasoned that "unlike biological and adoptive parenthood, the status of in loco parentis is temporary, flexible, and capable of being both suspended and reinstated" and that therefore "an individual standing in loco parentis, which is temporary in nature, is not the functional equivalent of a lawful parent for all purposes or in all contexts." 295 Neb. at 286, 887 N.W.2d at 715-16.

We have further explained that "in loco parentis is a common-law doctrine that gives standing to a nonparent to exercise the rights of a natural parent when the evidence shows that the nonparent's exercise of such rights is in the child's best interests." *In re Guardianship of Brydon P.*, 286 Neb. 661, 673, 838 N.W.2d 262, 271 (2013). In *In re Guardianship of Brydon P.*, we recognized that in loco parentis is a standing doctrine and that in loco parentis status is transitory; we held that the trial court in that case did not err when it rejected a child's grandmother's request for permanent parental status under the doctrine of in loco parentis. Therefore, under our precedent, in loco parentis is not a permanent status; its presence, however, establishes one's standing to seek rights of custody and visitation at a specific time and in a specific proceeding.

[3] Because in loco parentis status is transitory and not permanent, it may be lost. We have noted that application of the in loco parentis doctrine "depends upon the circumstances in existence when the nonparent claims a child's best interests lie in allowing him or her to exercise parental rights." *Id*. at 674, 838 N.W.2d at 272. But because in loco parentis status is transitory, we have specifically stated that "[o]nce the

person alleged to be in loco parentis no longer discharges all duties incident to the parental relationship, the person is no longer in loco parentis" and that "[t]ermination of the in loco parentis relationship also terminates the corresponding rights and responsibilities afforded thereby." *In re Interest of Destiny S.*, 263 Neb. 255, 261, 639 N.W.2d 400, 406 (2002).

The understanding that in loco parentis status is a transitory status relevant to one's standing to seek custody and visitation informs our review of the district court's decision in this case. Margaret's standing in the present action was not challenged. At the time Hannah filed this action in the Nebraska district court, the Texas order granting Margaret certain rights with regard to the child was still in effect. Therefore, it was clear that Margaret had an interest and standing in this action, and she did not need to establish standing by showing that she had in loco parentis status.

[4] Hannah filed the present action as a request for modification of the custody provisions of the Texas order. Ordinarily, custody of a minor child will not be modified unless there has been a material change in circumstances showing that the custodial parent is unfit or that the best interests of the child require such action. *Hopkins v. Hopkins*, 294 Neb. 417, 883 N.W.2d 363 (2016). First, the party seeking modification must show a material change in circumstances, occurring after the entry of the previous custody order and affecting the best interests of the child. *Id*. Next, the party seeking modification must prove that changing the child's custody is in the child's best interests. *Id*.

Because it was not necessary to refer to the in loco parentis doctrine to establish Margaret's standing in this action, the question whether Margaret's in loco parentis relationship with the child still existed was relevant in this case only to the extent it was relevant to the court's consideration of whether or not it was in the child's best interests for Margaret to continue to have rights of custody and visitation. Because the rights Margaret had under the Texas order were based on legal concepts similar to our understanding of the in loco parentis

doctrine, we think that consideration of whether Margaret continued to maintain such status since the time of the Texas order is relevant to determining whether there has been a material change in circumstances and whether modification of Margaret's rights is in the child's best interests.

As we noted in *Windham v. Griffin*, 295 Neb. 279, 887 N.W.2d 710 (2016), an individual standing in loco parentis, which is temporary in nature, is not the functional equivalent of a lawful parent for all purposes or in all contexts. We believe that modification of custody is a context in which one who obtained rights as a result of in loco parentis status will be considered differently from one who is a lawful parent; therefore, whether one has maintained the sort of relationship with the child that gave rise to in loco parentis status is relevant to modification of custody and visitation rights, both in determining whether there has been a material change of circumstances and whether a modification of custodial and visitation rights is in the child's best interests.

We find that in this case, the district court did not abuse its discretion when it considered the change in Margaret's relationship with the child since the time of the Texas order, along with other factors, and determined that a material change in circumstances had occurred and that a modification order to eliminate Margaret's rights of custody and visitation was warranted. We note first that the evidence showed that a change had occurred in the circumstances that had led to the determination that Margaret had at one time held in loco parentis status with regard to the child. Such determination had been based on evidence that after her birth, the child lived with Margaret and Hannah and that Margaret had supported the child. But the evidence presented at the trial in 2016 showed that for a considerable time before the trial, Margaret had not, to use in loco parentis terminology, "assumed the obligations incident to the parental relationship."

The evidence indicated that after the Texas order and until 2014, Margaret's support of the child had been limited to support she provided while the child was in her possession. The

evidence also showed that Margaret had not provided health insurance for the child as had been directed in the Texas order. The evidence further showed that since 2014, Margaret had assumed few of the obligations incident to the parental relationship. Margaret's contact with the child had been minimal, and she had provided almost no support other than occasional gifts.

Margaret contends that these facts cannot be used against her, because since 2014, Hannah had prevented her from having contact with the child. But there was also evidence that the lack of contact was the result of Margaret's mental health issues, and the district court found that Hannah had valid reasons for limiting Margaret's contact with the child. Whether Margaret's lack of contact was the fault of Hannah, the result of issues beyond Margaret's control, or Margaret's own actions, it is clear that for 2 years prior to the trial in this case, Margaret had not been performing the obligations incident to the parental relationship. To the extent Margaret presented evidence that she attempted to maintain a relationship with the child, such attempts appear to have been focused on contact and visitation with the child and they do not appear to have been attempts to perform obligations incident to the parental relationship, such as offering to provide financial support for the child. The evidence in this case clearly established a material change in circumstances since the time the Texas order was entered, because the nature and extent of Margaret's relationship with the child had changed materially.

With respect to the best interests of the child, we also believe that the evidence supported the district court's determination that it was in the child's best interests to terminate Margaret's court-ordered rights of custody and visitation. Because the relationship had diminished over time, there was less justification to legally require custody and visitation. As this case illustrates, it is within the court's discretion to consider the fact that in the first instance, Margaret's rights were based on her having had in loco parentis status rather than being a legal parent. Because her rights were initially based on

maintaining an existing relationship that was beneficial to the child rather than maintaining a parental relationship that was favored by the law, the fact that the relationship had diminished over time is of greater weight in this circumstance than it would be were the court considering the rights of a legal parent. The law would ordinarily favor maintaining the relationship with a legal parent. See, e.g., *Windham v. Griffin*, 295 Neb. 279, 887 N.W.2d 710 (2016) (discussing parental preference). But in this case, it was valid for the court to consider whether maintaining the relationship through court-ordered rights of custody and visitation was in the child's best interests when Margaret had not been assuming the obligations incident to the parental relationship. We conclude that the court did not abuse its discretion when it determined that it was not in the child's best interests to continue Margaret's court-ordered rights of custody and visitation.

## CONCLUSION

Having rejected Margaret's assignments of error, we affirm the district court's order.

Affirmed.

Wright, Kelch, and Funke, JJ., not participating.