VANESSA L. LENZ, APPELLANT, V. HAROLD E. LENZ, APPELLEE.

382 N.W.2d 323

Filed February 28, 1986.   No. 84-870.

Jerry L. Pettit, for appellant.

Steven J. Lustgarten of Lustgarten & Roberts, P.C., for appellee.

BOSLAUGH, HASTINGS, and GRANT, JJ., and BRODKEY, J., Retired, and RIST, D.J.

GRANT, J.

This is an appeal by Vanessa L. Kiersz, formerly Vanessa L. Lenz, from the district court for Douglas County, Nebraska, where the district court denied all relief sought in her "Application to Modify Decree" rendered in an earlier dissolution of marriage case. Vanessa timely appealed to this court. She assigns as error that the trial court (1) failed to enforce and determine the arrearage due under paragraph (j) of the decree that requires the appellee, Harold E. Lenz, to pay "all of the expenses for the minor child's special schooling" and

(2) failed to increase child support. For the reasons set forth hereinafter, we affirm.

A decree was entered in Douglas County District Court on May 13, 1976, dissolving the marriage of Harold and Vanessa Lenz. There was one child born of the marriage, Dana, born October 3, 1973, who suffers from a profound hearing loss. Vanessa received custody of Dana. In addition to paying $175 a month in child support, the decree also required Harold to pay all expenses of the minor child's special schooling. The pertinent provision of the decree states: "(j) That respondent [Harold] shall pay all of the expenses for the minor child's special schooling; however, with the exception that any monies which the Petitioner [Vanessa] shall receive from the Easter Seal organization, shall be applied by Petitioner to said minor child's special schooling."

At the time of the decree, Dana was enrolled in and attended the Omaha Hearing School for Children. Tuition at the school was approximately $1,150 per year, most of which was paid by Harold. Harold was also involved in the decision to place Dana at the school.

Dana progressed well at the Omaha Hearing School, and at the recommendation of the director of the school and Dana's tutors, both Vanessa and Dana moved to Denver, Colorado, to enroll Dana in Doreen Pollack's program at Porter Memorial Hospital. Prior to the move, Vanessa obtained a court order dated August 24, 1976, allowing her to remove Dana from the State of Nebraska. This order did not change any other part of the decree, and was consented to by Harold. Harold later moved to Denver, in November of 1976, because he wanted to be closer to his daughter.

Harold testified that Vanessa consulted with him before Dana was enrolled in the Pollack school in Denver. He further testified that he "pretty well knew what it [the program] would basically cost per month or per session." Vanessa testified that Harold did not object to her enrolling Dana in this school.

Vanessa also testified that during the 3 years Dana was enrolled in school in Denver, she (Vanessa) incurred no out-of-pocket costs with regard to this program. Vanessa had applied for and received a grant from the Listen Foundation.

The tuition at the Denver school was about $150 per month. The grant from the Listen Foundation paid for a majority of the program along with a Montessori program that Dana was enrolled in. Harold testified that he eventually paid about $900 to the Denver school, which amount represented the part of tuition not paid by the Listen Foundation. In September 1979 Dana reached school age, and she was placed in the Denver public school system. Vanessa testified that even though the school system had special classes for hearing-impaired children, Dana's language became sloppy, she could not keep up in the classroom, and she regressed. Dana spent only 2 months in the public school.

The Denver hearing school authorities and the director of the Denver public school system advised Vanessa to enroll Dana in the St. Joseph Institute for the Deaf, in St. Louis, Missouri. St. Joseph's is a program similar to the Omaha Hearing School and Doreen Pollack's program at Porter Memorial Hospital in Denver. All three utilize an oral program, rather than signing, in communicating. St. Joseph's is a boarding school which costs about $5,400 per year, including tuition, board, and room. Vanessa testified that she wanted to review the program at St. Joseph's and discussed this matter with Harold. With regard to meeting the financial commitments of St. Joseph's, Harold testified that Vanessa told him "not to worry about that, that it was her decision."

Harold and Vanessa met a second time, after Vanessa had taken Dana to St. Joseph's to be tested. Vanessa indicated that everything had gone well and that she wanted to enroll Dana as soon as possible. She further testified that Harold had "many, many questions" about how the tuition was to be paid. She also testified that she "knew what the tuition would be," that Harold "indicated he would help," but that "[h]e didn't give me an amount." Harold testified Vanessa told him that "it was her [Vanessa's] problem and her decision to send Dana to this school . . . ." No court order was sought in connection with this proposed move, with the increased expenses to be incurred.

Dana was, in fact, enrolled in St. Joseph's, and she stayed there from 1979 through 1984. Vanessa claims that she incurred total out-of-pocket expenses in special schooling costs

amounting to $12,570. Harold has not paid anything to St. Joseph's, and the balance due the school, after crediting scholarship amounts awarded by the United Way of St. Louis, is $8,144.46. Vanessa and Dana have since moved to Ralston, Nebraska, where the Ralston Public School District is presently paying the entire cost for Dana to attend the Central Institute for the Deaf in St. Louis.

An action to modify a decree of dissolution is equitable in nature. We review matters involving domestic relations de novo on the record. In such cases the matters are initially entrusted to the sound discretion of the trial court, and the trial court's order will be affirmed on appeal in the absence of an abuse of the trial court's discretion, taking into account and giving weight to the fact that the trial court observed and heard the witnesses and accepted one version of the facts rather than another. Neb. Rev. Stat. § 25-1925 (Reissue 1979); *Guggenmos v. Guggenmos*, 218 Neb. 746, 359 N.W.2d 87 (1984). We have applied that standard to the review of cases involving appeals in modification of child support. *Graber v. Graber*, 220 Neb. 816, 374 N.W.2d 8 (1985).

In her first assignment of error, Vanessa contends that the doctrine of res judicata bars any readjudication on the issue of the enforceability of paragraph (j), which requires Harold to pay "all of the expenses for the minor child's special schooling." Vanessa contends res judicata is applicable in this case because there has been a final judgment on the merits by a court of competent jurisdiction, and, as such, prior litigation is conclusive upon the parties in any subsequent litigation concerning the same cause of action, citing *Vantage Enterprises, Inc. v. Caldwell*, 196 Neb. 671, 244 N.W.2d 678 (1976).

Vanessa also urges that while a court may, on its own motion, modify the decree to delete the specific provision and refuse to give it future effect, it cannot, ex post facto, deny giving effect to the provision in the original decree. In the alternative, Vanessa contends that the special schooling costs are in the nature of child support. That being the case, this court may not forgive or modify past-due child support but may modify the amount of child support that becomes due in the future. *Eliker v. Eliker*, 206 Neb. 764, 295 N.W.2d 268 (1980).

We hold that these contentions, while generally correct, do not control the disposition of this case. The trial court made a specific finding in its order concerning the "special schooling costs" provision and the arrearages Vanessa claims she is due. The order states in part as follows: "If and when reasonably necessary special schooling requires substantial outlays from the parents, a concrete controversy may be presented to the court for resolution in the context of all the circumstances." The trial court's position apparently was that it could not correct the decree with regard to past occurrences but stood ready to review the decree for any future changes that might be necessary.

At the time the decree was entered, Dana was enrolled at the Omaha Hearing School at a cost of approximately $1,150 per year. Dana was 3 years old at the time. By the time Dana started at St. Joseph's, she was 6. The cost per year was approximately $5,400, including room and board.

In her first request for relief, Vanessa requested the trial court in her application to modify the decree "to calculate the Respondent's [Harold's] arrearage under said Decree for expenses he was ordered to pay for the special schooling required by the minor child of the parties." It is Vanessa's position that once the divorce decree became final, the amount due under this provision became a judgment against Harold in much the same way as child support becomes a judgment against a debtor as it accrues. Thus, Vanessa's request to enforce this provision along with determining the amount due is akin to a creditor's seeking to enforce a judgment.

It is well established that a judgment must be sufficiently certain in its terms to be able to be enforced in a manner provided by law. It must be in such a form that a clerk is able to issue an execution upon it which an officer will be able to execute without requiring external proof and another hearing. A judgment for money must specify with definiteness and certainty the amount for which it is rendered. *Bishop v. Bishop*, 151 S.W.2d 553 (Mo. App. 1941); 49 C.J.S. *Judgments* §§ 72 and 76 (1947); 46 Am. Jur. 2d *Judgments* § 81 (1969). See, also, Annot., 55 A.L.R.2d 723 (1957).

In *Cockle v. Cockle*, 204 Neb. 88, 281 N.W.2d 392 (1979),

this court held that a judgment of the superior court of California awarding the wife a percentage of the husband's military retirement pay was not for an amount certain and, therefore, could not be registered. In *Cockle* we said that in order for a foreign judgment to be enforceable, it must create a definite and absolute indebtedness and be rendered by a court having jurisdiction of the parties and the subject matter. We see no reason to deviate from this rule regarding judgments rendered by Nebraska courts.

In *Loomstein v. Mercantile Trust National Ass'n*, 507 S.W.2d 669 (Mo. App. 1974), the Missouri Court of Appeals affirmed an order granting a motion to quash an execution and garnishment on a judgment against a father who was required, pursuant to a stipulation made part of the divorce decree, to "pay all sums necessary for his daughter's college and graduate school tuition, books, room and board." *Id.* at 670. The court held that the execution was improper because of the lack of definiteness and certainty in the amounts required to be paid. The court also held that since no specific sums for the college education or method to compute such sums had been included in the decree, the decree was not subject to execution because the amount owed by the father could not be ascertained without going beyond the record.

Similarly, *Rodden v. Rodden*, 527 S.W.2d 41 (Mo. App. 1975), held a judgment ordering the father to "pay all extraordinary medical expenses" of his noncustodial son to be unenforceable. The court stated: "A judgment for money must specify with definiteness and certainty the amount for which it is rendered, and a judgment incapable of enforcement because of indefiniteness is void." *Rodden v. Rodden, supra* at 43.

In *Jewell v. Jackson & Whitsitt Cotton Co.*, 331 So. 2d 623, 625 (Ala. 1976), the court held a judgment "must be conclusive and certain in itself. [Citations omitted.] All matters should be decided; damages should be assessed with specificity leaving the parties with nothing to determine on their own."

The rationale behind a rule requiring a judgment to be definite and certain is that the rights and liabilities of the parties to the action must be able to be determined, and the unsuccessful party may readily understand and be capable of

performing that which he is ordered to do, from the judgment itself. Additionally, a sheriff or other executing officer must know how much money or property to seize in order to satisfy the debt. If the decree or judgment is silent or ambiguous as to the amount, execution would not be proper.

Therefore, we hold that the part of the divorce decree in this case which ordered the payment of "all of the expenses for the minor child's special schooling" is indefinite, uncertain, and incapable of enforcement. For these reasons it is fatally defective and cannot be enforced. There is simply no definite amount as to what Harold would be required to pay if this provision were enforced.

We find nothing in the record before us which would aid in ascertaining with definiteness and certainty the amount due under the special schooling provision in the decree in this case. An order, such as the provision in this case, cannot be construed to constitute carte blanche authority in Vanessa to send the child anywhere, at any expense, and to assess the costs against Harold. Vanessa's first assignment of error is without merit.

Vanessa's second assignment of error is that the trial court erred in failing to increase the child support award of $175 per month. The trial court found on this issue that "in the present circumstances respondent's payments of $175.00 per month cover these [costs incidental to the child's schooling] and other expenses of the child to the extent of his [Harold's] reasonable liability to contribute." In our de novo review of the record, we cannot say that the trial court abused its discretion in so finding. The order refusing to modify the child support order was correct.

AFFIRMED.