Nebraska Supreme Court Online Library
www.nebraska.gov/apps-courts-epub/
03/05/2021 09:08 AM CST

Alyssa Lee Windham, appellee, v.
Rebecca Diane Kroll, appellant.

___ N.W.2d ___

Filed December 11, 2020.    No. S-20-095.

1. **Modification of Decree: Child Custody: Visitation: Child Support.**
   The proper legal standard to apply when modifying provisions pertaining to custody, visitation, or support of a minor child is a question of law.
2. **Statutes: Appeal and Error.** On questions of law, an appellate court is obligated to reach a conclusion independent of the determination reached by the court below.
3. **Modification of Decree: Child Custody: Visitation: Child Support: Appeal and Error.** Modification of a judgment or decree relating to child custody, visitation, or support is a matter entrusted to the discretion of the trial court, whose order is reviewed de novo on the record, and will be affirmed absent an abuse of discretion.
4. **Parent and Child: Words and Phrases.** In loco parentis is a common-law doctrine that gives standing to a nonparent to exercise the rights of a natural or adoptive parent when the evidence shows the nonparent's exercise of such rights is in the child's best interests.
5. **Parent and Child.** In order to stand in loco parentis, one must assume all obligations incident to the parental relationship.
6. ____. In loco parentis status is not equivalent to status as a parent, and it does not entitle a person to all the same rights that a legal parent would enjoy.
7. ____. In loco parentis status does not, by itself, eclipse the superior nature of the parental preference accorded to biological or adoptive parentage.
8. **Modification of Decree: Parent and Child: Child Custody: Visitation: Child Support.** Judgments establishing in loco parentis rights regarding the custody, visitation, and support of a minor child will ordinarily not be modified absent a material change in circumstances affecting the

best interests of the child. However, if raised by the parties, whether the in loco parentis relationship has changed is relevant to determining both whether there has been a material change in circumstances and whether modification is in the child's best interests. Moreover, when modifying custody rights as between a natural or adoptive parent and one who stands in loco parentis, the parental preference doctrine applies.

9. **Judgments: Words and Phrases.** An abuse of discretion occurs when a trial court bases its decision upon reasons that are untenable or unreasonable or if its action is clearly against justice or conscience, reason, and evidence.

10. **Modification of Decree: Child Support: Property Settlement Agreements.** The fraud or gross inequity standard is inapplicable to actions involving modification of child support, even when such support was part of a voluntary property settlement agreement approved by the court and incorporated into the decree.

11. **Modification of Decree: Child Support.** Provisions regarding the support of minor children are properly characterized as child support for purposes of the legal standard to be applied in a modification action.

Appeal from the District Court for Douglas County: J. Michael Coffey, Judge. Affirmed.

Michael S. Kennedy, of Kennedy Law Firm, P.C., L.L.O., for appellant.

Jamie C. Cooper, of Johnson & Pekny, L.L.C., for appellee.

Heavican, C.J., Miller-Lerman, Cassel, Stacy, Funke, Papik, and Freudenberg, JJ.

Stacy, J.

The primary question in this appeal is which legal standard to apply when modifying a judgment establishing custody, visitation, and support of minor children based on the common-law doctrine of in loco parentis. The district court modified several provisions pertaining to the support of the minor children upon finding a material change in circumstances. We conclude the correct modification standard was applied, and we affirm the modification order.

## I. BACKGROUND

Alyssa Lee Windham and Rebecca Diane Kroll were in a relationship for approximately 17 years, but never married. During their relationship, Kroll gave birth to two children, and Windham and Kroll shared parenting responsibilities. Windham is not biologically related to the children, nor did she adopt them.

The couple separated in 2011. Windham moved out of the shared residence, but the parties continued to share parenting duties.

### 1. 2012 Judgment

In January 2012, Windham filed a complaint against Kroll in the district court for Douglas County. The operative amended complaint alleged Windham stood in loco parentis to the minor children and asked the court to establish custody, set a parenting time schedule, allocate child-related expenses, and order monthly child support based on the Nebraska Child Support Guidelines. Kroll's answer denied that Windham stood in loco parentis to the children and asked the court to award her sole legal and physical custody as their biological mother.

Eventually, Windham and Kroll reached an agreement as to Windham's in loco parentis status, child custody and visitation, and the shared payment of certain expenses related to the children. Both parties were represented by counsel, and the minor children were represented by a guardian ad litem. As relevant to the issues on appeal, the parties agreed as follows:
- Windham stood in loco parentis to the minor children.
- The parties would share joint legal and physical custody of the children, and Windham would have regular parenting time pursuant to a stipulated parenting plan.
- Each party would pay 50 percent of any school or employment-related childcare expenses and 50 percent of any nonreimbursed medical, dental, and vision expenses.
- The minor children would attend private primary and secondary school, and each party would pay 50 percent of "any tuition, school supplies, school dues, after-school programs,

sports and other extracurricular activities incurred for the benefit of the minor children."
• Each party would continue making monthly contributions of $166 to the minor children's college savings plans.

The district court approved the parties' settlement agreement and stipulated parenting plan, and it incorporated the same into the judgment entered on October 10, 2012. No party appealed from the 2012 judgment.

## 2. 2015 Stipulated Modification

In October 2015, the parties filed a complaint characterized as a joint stipulation for modification. They stipulated there had been a material change in circumstances that warranted adding a provision to the parenting plan directing that neither party would use or be under the influence of alcohol or controlled substances during their parenting time. The district court approved this stipulated modification, and no party appealed.

## 3. 2017 Complaint to Modify

In October 2017, Kroll filed a complaint to modify, seeking sole legal and physical custody of both minor children. She alleged there had been a material change in circumstances in that Windham had been charged with abusing the children and had used alcohol in their presence and while transporting them. Kroll also sought an award of monthly child support. Windham's answer denied the relevant allegations.

## (a) Temporary Orders

In February 2018, while Kroll's complaint for modification was pending, the court entered a "Stipulated Temporary Order" reflecting the parties' agreement to temporarily modify custody and parenting time and to order temporary child support. Kroll was given sole physical and legal custody of the children, and Windham was awarded specific parenting time. Windham was ordered to pay temporary child support of $1,300 per month, and Kroll was ordered to pay the first $480 in nonreimbursed medical expenses, with the parties splitting

such expenses 50-50 thereafter. Responsibility for "school or employment-related expenses and tuition" was reallocated so that Kroll paid 60 percent and Windham paid 40 percent.

In May 2019, Windham moved to reduce her temporary child support payment, alleging she had lost her previous job and was earning less at her new job. The parties stipulated to a temporary order entered in June 2019 which reduced Windham's monthly child support obligation to $1,149 and reallocated responsibility for nonreimbursed medical expenses exceeding $480 so that Windham paid 45 percent and Kroll paid 55 percent. This temporary order specifically directed that Windham was "no longer responsible for her portion of the minor children's reasonable and necessary direct expenses, including, but not limited to, clothing and extracurricular expenses." It also ordered that "until further Order of the Court, [Windham] shall remain responsible for her portion of the children's school tuition, supplies, and dues."

### (b) Counterclaim

In August 2019, Windham was allowed to file a counterclaim for modification. The counterclaim alleged there had been a material change in circumstances since the entry of the 2012 judgment, in that Windham's income had decreased and was likely to remain decreased. She asked the court to calculate any child support using the Nebraska Child Support Guidelines. She also asked the court to reduce the amount of her "contribution toward out-of-pocket expenses, including childcare, medical expenses, private school tuition, extracurricular expenses, and contribution to the children's college savings plan."

### 4. Trial on Complaint to Modify and Counterclaim

In November 2019, trial was held on Kroll's complaint to modify and Windham's counterclaim. The parties advised the court they had successfully mediated their dispute as to custody and parenting time, and they agreed Kroll should have

sole legal and physical custody of the minor children. They also agreed Windham should have regular parenting time pursuant to a phased schedule, and they agreed to certain safety and communication provisions. The parties asked the court to modify custody and visitation in accordance with their agreement and to approve and adopt their modified parenting plan.

The parties were unable to agree on how to modify support-related provisions in light of the stipulated custody change. So the matter proceeded to trial on Kroll's request for monthly child support and Windham's request to reduce her responsibility for certain child-related expenses.

### (a) Kroll's Testimony

The children were in eighth and sixth grade at the time of trial. Kroll testified that both children had attended a private religious grade school since kindergarten and that their tuition was approximately $3,000 per year for each child. Kroll estimated tuition for a private religious high school would be approximately $11,000 per year each. But she testified that actual tuition would depend on the amount of financial aid awarded by the school, which considered the children's academic achievements, the parents' financial resources, and the children's willingness to engage in workstudy programs.

Kroll acknowledged she was seeking monthly child support from Windham based on their agreement that Kroll should have sole custody, and Kroll expected that as the primary physical custodian, she would be 100 percent responsible for the children's clothing and daily food needs. But Kroll asked the court not to modify Windham's responsibility for other child-related expenses under the 2012 judgment, reasoning that provisions regarding school tuition and expenses, college savings, and extracurricular activities were "outside the province of child support."

### (b) Windham's Testimony

Windham asked the court to approve the mediated agreement giving Kroll sole legal and physical custody. She also

asked the court to order her to pay monthly child support based on the Nebraska Child Support Guidelines. But Windham asked the court to modify the expense-sharing provisions of the 2012 judgment so that she was no longer responsible for 50 percent of the children's school tuition and no longer required to pay $166 per month into the children's college savings accounts.

Windham acknowledged that she had stipulated to these provisions in the 2012 judgment, but claimed they should be modified because of the change in custody and because her financial circumstances had changed. With respect to the latter, she testified she had been terminated from her previous job and earned less money at her new job. Windham submitted a proposed child support calculation to the court that would require her to pay $1,050 per month for two children. Windham testified that if ordered to pay this amount of monthly child support, she could not also afford to pay half the expenses related to school tuition or contribute to the children's college savings plans at the same level she had in the past.

### 5. 2020 Order of Modification

On January 6, 2020, the court entered an order of modification. The order approved and incorporated the parties' mediated parenting plan, finding it was in the children's best interests. Pursuant to that plan, Kroll was awarded sole legal and physical custody of the minor children, subject to Windham's regular parenting time.

The court found the agreed-upon changes to custody and parenting time amounted to a material change in circumstances supporting modification of several support-related provisions, and it modified the 2012 judgment to (1) order Windham to pay monthly child support of $1,050 for two children and $763.80 per month when only one child remains entitled to support, (2) eliminate the provision requiring monthly contributions to the children's college savings plans, and (3) reallocate responsibility for the children's "tuition and educational expenses" so that Windham would pay 33⅓ percent of such expenses and Kroll would pay 66⅔ percent. The order of

modification also stated that any term of the 2012 judgment "not modified herein or by subsequent order" would remain in full force and effect.

Kroll filed this timely appeal, which we moved to our docket on our own motion.

## II. ASSIGNMENTS OF ERROR

Kroll assigns that the district court erred by modifying the terms of the October 2012 judgment relating to (1) allocation of school tuition and expenses and (2) contributions to the children's college savings funds.

Kroll's primary argument on appeal is that the district court applied the wrong legal standard when it modified these provisions based on a material change in circumstances. She contends that because the provisions were voluntarily agreed to by the parties and incorporated into a consent judgment from which neither party appealed, the provisions could not be modified absent a showing of fraud or gross inequity.[1]

## III. STANDARD OF REVIEW

[1,2] The proper legal standard to apply when modifying provisions pertaining to custody, visitation, or support of a minor child is a question of law.[2] On questions of law, an appellate court is obligated to reach a conclusion independent of the determination reached by the court below.[3]

[3] Modification of a judgment or decree relating to child custody, visitation, or support is a matter entrusted to the discretion of the trial court, whose order is reviewed de novo on the record, and will be affirmed absent an abuse of discretion.[4]

---

[1] See, generally, *Carlson v. Carlson*, 299 Neb. 526, 909 N.W.2d 351 (2018); *Strunk v. Chromy-Strunk*, 270 Neb. 917, 708 N.W.2d 821 (2006).

[2] See *Reinsch v. Reinsch*, 259 Neb. 564, 611 N.W.2d 86 (2000).

[3] *Benjamin M. v. Jeri S., ante* p. 733, 950 N.W.2d 381 (2020).

[4] See, *Tilson v. Tilson, ante* p. 275, 948 N.W.2d 768 (2020); *Whilde v. Whilde*, 298 Neb. 473, 904 N.W.2d 695 (2017); *State on behalf of Jakai C. v. Tiffany M*., 292 Neb. 68, 871 N.W.2d 230 (2015); *Caniglia v. Caniglia*, 285 Neb. 930, 830 N.W.2d 207 (2013).

## IV. ANALYSIS

### 1. Modification of In Loco Parentis Custody, Visitation, and Support

Most of our appellate decisions involving the modification of child custody, visitation, and support arise in the context of dissolution and paternity actions, where it is well-established that provisions in a decree or order relating to custody, visitation, and support may be modified upon a showing of a material change in circumstances affecting the best interests of the child.[5] The instant modification did not arise in a dissolution or a paternity action; instead, it arose in an action to establish custody, support, and visitation rights based on Windham's common-law status as one who stood in loco parentis to the minor children.

[4-7] In loco parentis is a common-law doctrine that gives standing to a nonparent to exercise the rights of a natural or adoptive parent when the evidence shows the nonparent's exercise of such rights is in the child's best interests.[6] In order to stand in loco parentis, one must assume all obligations incident to the parental relationship.[7] In loco parentis status is not equivalent to status as a parent, however, and it does not entitle a person to all the same rights that a legal parent would enjoy.[8] Moreover, in loco parentis status does not, by itself, eclipse the superior nature of the parental preference accorded to biological or adoptive parentage.[9]

The parties' briefing generally assumes that once a judgment is entered establishing the custody, visitation, and support

---

[5] See, e.g., *Tilson, supra* note 4; *State on behalf of Fernando L. v. Rogelio L.*, 299 Neb. 329, 907 N.W.2d 920 (2018).

[6] See, *State on behalf of Tina K. v. Adam B., ante* p. 1, 948 N.W.2d 182 (2020); *Windham v. Griffin*, 295 Neb. 279, 887 N.W.2d 710 (2016); *Latham v. Schwerdtfeger*, 282 Neb. 121, 802 N.W.2d 66 (2011), *disapproved on other grounds, Windham, supra* note 6.

[7] *State on behalf of Tina K., supra* note 6.

[8] *Id.*

[9] *Id.*

rights and responsibilities of one who stands in loco parentis, any subsequent modification of that judgment will be governed by the same legal standards and principles that govern modification of similar provisions in a dissolution or paternity decree. With two important caveats, we agree.

In dissolution, separation, and paternity actions, issues regarding the custody, visitation, and support of minor children are governed largely by statute.[10] There currently is no statutory scheme governing the rights and responsibilities of one who stands in loco parentis. But this court has consistently held that even absent statutory authorization, a district court has equitable jurisdiction to determine the rights and responsibilities of one who stands in loco parentis to a child, including custody, visitation, and support.[11] And once such rights and responsibilities have been established by a district court, we have recognized they can be modified.[12] But our cases make clear that when modifying the rights and responsibilities of one who stands in loco parentis, courts may also need to consider whether the in loco parentis relationship has changed[13] and whether the parental preference doctrine applies.[14]

---

[10] See, Neb. Rev. Stat. §§ 42-341 to 42-381 (Reissue 2016 & Cum. Supp. 2018) (dissolution); Neb. Rev. Stat. §§ 43-1401 to 43-1418 (Reissue 2016, Cum. Supp. 2018 & Supp. 2019) (paternity).

[11] See, *Windham, supra* note 6 (one who stands in loco parentis has right to seek custody and visitation, but parental preference doctrine still applies); *Latham, supra* note 6 (common-law doctrine of in loco parentis confers standing to seek custody and visitation when in best interests of child). See, also, *Charleen J. v. Blake O.*, 289 Neb. 454, 855 N.W.2d 587 (2014) (holding Nebraska common law recognizes action in equity for custody). Accord *Weinand v. Weinand*, 260 Neb. 146, 616 N.W.2d 1 (2000), *disapproved on other grounds, Windham, supra* note 6 (no basis to order ex-stepparent to pay child support because he did not currently stand in loco parentis to minor child).

[12] See, *State on behalf of Tina K., supra* note 6; *Whilde, supra* note 4.

[13] *Whilde, supra* note 4.

[14] *State on behalf of Tina K., supra* note 6; *Windham,* supra note 6.

In *Whilde v. Whilde*,[15] we reviewed an order modifying the custody and visitation rights of one who stood in loco parentis to a minor child born during an unmarried same-sex relationship. In doing so, we recited the well-established modification standard from our dissolution and paternity cases, noting:

> Ordinarily, custody of a minor child will not be modified unless there has been a material change in circumstances showing that the custodial parent is unfit or that the best interests of the child require such action. . . . First, the party seeking modification must show a material change in circumstances, occurring after the entry of the previous custody order and affecting the best interests of the child. . . . Next, the party seeking modification must prove that changing the child's custody is in the child's best interests.[16]

The biological mother in *Whilde* claimed her former partner's in loco parentis status had ended. We recognized this argument when considering whether there had been a material change in circumstances, reasoning:

> [A]n individual standing in loco parentis, which is temporary in nature, is not the functional equivalent of a lawful parent for all purposes or in all contexts. We believe that modification of custody is a context in which one who obtained rights as a result of in loco parentis status will be considered differently from one who is a lawful parent; therefore, whether one has maintained the sort of relationship with the child that gave rise to in loco parentis status is relevant to modification of custody and visitation rights, both in determining whether there has been a material change in circumstances and whether a modification of custodial and visitation rights is in the child's best interests.[17]

---

[15] *Whilde, supra* note 4.

[16] *Id.* at 487, 904 N.W.2d at 705 (citations omitted).

[17] *Id.* at 488, 904 N.W.2d at 705.

In *State on behalf of Tina K. v. Adam B.*,[18] the biological mother of a minor child appealed from a modification order giving sole custody to a woman who stood in loco parentis to the child. The mother claimed her status as the natural parent entitled her to custody. We emphasized that because natural and adoptive parents have a fundamental right to make decisions concerning the care, custody, and control of their minor children which is constitutionally protected, custody disputes between a natural or adoptive parent and a nonparent are governed by the parental preference doctrine.[19] That doctrine establishes a rebuttable presumption that the best interests of a minor child are served by placing custody of the child with his or her parent and, absent proof that a parent is unfit or has forfeited the right to custody, a parent may not ordinarily be deprived of the custody of a minor child.[20] In prior cases, we suggested it may be possible to overcome the parental preference doctrine by showing "the best interests of the child lie elsewhere,"[21] but we described such circumstances as "exceptional."[22] In *State on behalf of Tina K.*, we explained that in order for such exceptional circumstances to negate the parental preference doctrine, there must be proof of serious physical or psychological harm to the child or a substantial likelihood of such harm.[23] We therefore reversed the order modifying custody and remanded the matter for reconsideration of the parental preference doctrine.

So while we generally agree with the parties that the legal standards governing modification of in loco parentis

---

[18] *State on behalf of Tina K., supra* note 6.

[19] *Id.* See, also, *Windham, supra* note 6 (holding parental preference doctrine applies in custody dispute between natural or adoptive parent and one who stands in loco parentis).

[20] *State on behalf of Tina K., supra* note 6.

[21] *Windham, supra* note 6, 295 Neb. at 288, 887 N.W.2d at 717.

[22] *Id.* at 290, 887 N.W.2d at 718.

[23] *State on behalf of Tina K., supra* note 6.

custody, visitation, and support are similar to the standards governing custody and support modifications in a dissolution or paternity action, the standards are not identical. *Whilde* demonstrates that consideration may also need to be given to whether the in loco parentis status has changed, and *State on behalf of Tina K.* teaches that when modifying custody rights as between a natural or adoptive parent and one who stands in loco parentis, the parental preference doctrine applies.

[8] We therefore hold that judgments establishing in loco parentis rights regarding the custody, visitation, and support of a minor child will ordinarily not be modified absent a material change in circumstances affecting the best interests of the child.[24] However, if raised by the parties, whether the in loco parentis relationship has changed is relevant to determining both whether there has been a material change in circumstances and whether modification is in the child's best interests.[25] Moreover, when modifying custody rights as between a natural or adoptive parent and one who stands in loco parentis, the parental preference doctrine applies.[26]

On this record, the district court applied the correct legal standard to the requested modifications to custody, visitation, and support of one who stands in loco parentis. The parties did not dispute Windham's continued in loco parentis status, and Kroll did not assert the parental preference doctrine in seeking to modify the joint custody arrangement. To the contrary, the parties' mediated agreement to modify custody continued to describe Windham as a parent to the minor children, and the parties agreed that Windham should continue to have regular weekly parenting time with the children. Finding it was in the children's best interests, the court approved the mediated modification agreement giving Kroll, the natural parent, sole custody and adjusting Windham's regular parenting time.

---

[24] See, *id.*; *Whilde, supra* note 4.

[25] *Whilde, supra* note 4.

[26] See, *State on behalf of Tina K., supra* note 6; *Windham, supra* note 6.

On appeal, no party challenges the modifications to custody or parenting time and no party challenges Windham's in loco parentis status.

Instead, as noted earlier, Kroll assigns error only to the district court's modification of the provisions relating to the allocation of school tuition expenses and mandatory contributions to the children's college savings funds. The court modified these support-related provisions after finding that a material change in circumstances resulted from the parties' agreement to change from a joint custody arrangement to a sole custody arrangement. After reviewing this de novo on the record, we find no abuse of discretion.

[9] An abuse of discretion occurs when a trial court bases its decision upon reasons that are untenable or unreasonable or if its action is clearly against justice or conscience, reason, and evidence.[27] Here, the district court reasoned that changing from a joint custody arrangement, where Kroll and Windham shared child-related expenses equally, to an arrangement where Kroll had sole legal and physical custody, was a material change in circumstances warranting modification of the support-related provisions concerning the minor children. There was also evidence that Windham's financial circumstances had changed since the 2012 judgment.

On this record, the district court did not abuse its discretion in finding that a material change in circumstances justified modifying support-related provisions concerning the minor children. To the extent Kroll's appellate briefing can be understood to argue there was insufficient evidence of a material change in circumstances, the argument is without merit.

But in fairness to Kroll, her appellate briefing does not focus on the material change in circumstances standard, because her primary contention on appeal is that a higher modification standard should have been applied. We consider that argument next, and reject it.

---

[27] *Schrag v. Spear*, 290 Neb. 98, 858 N.W.2d 865 (2015).

## 2. No Merit to Kroll's Claim That
### Provisions Could Not Be Modified
#### Absent Fraud or Gross Inequity

Kroll argues that because the provisions regarding allocation of tuition expenses and college savings contributions were voluntarily agreed to by the parties and incorporated into a consent judgment from which neither party appealed, those provisions can be modified only upon a showing of fraud or gross inequity.[28] We addressed and rejected a similar argument in *Reinsch v. Reinsch*.[29]

In that case, a 1986 divorce decree incorporated a property settlement agreement in which the father agreed to pay $200 in monthly child support until the child reached the age of 18. The mother later sought to modify the support and extend it to the age of 19. The district court granted the modification, finding the enactment of certain child support statutes was a material change in circumstances justifying modification of the duration of child support. The father appealed, arguing the trial court had applied the wrong standard to modify support. He claimed that since the parties had agreed to the duration of child support in their property settlement agreement, the duration could be modified only upon a showing of fraud or gross inequity. We soundly rejected this argument.

We acknowledged, but distinguished, a line of cases holding as follows:

> [W]here a party to a divorce action voluntarily executes a property settlement agreement which is approved by the dissolution court and incorporated into a divorce decree from which no appeal is taken, provisions dealing with division of real and personal property, division of pension benefits, and division of stock will not

---

[28] See, generally, *Carlson, supra* note 1; *Strunk, supra* note 1.

[29] *Reinsch, supra* note 2.

thereafter be vacated or modified in the absence of fraud or gross inequity.[30] We noted this higher modification standard was premised on § 42-366. That statute is intended to promote amicable settlement of disputes attendant to divorce and separation, and it permits parties to enter into a "written property settlement agreement containing provisions for the maintenance of either of them, the disposition of any property owned by either of them, and the support and custody of minor children."[31] *Reinsch* recognized that our cases applying § 42-366 had generally held that "if the terms of a property settlement agreement with respect to real and personal property and maintenance are not found unconscionable, the agreement is binding upon the dissolution court and the initial decree must carry such agreement into effect."[32]

But *Reinsch* expressly found this heightened modification standard was inapplicable to provisions in a property settlement agreement regarding the custody and support of minor children. We reasoned that under § 42-366(2), agreements regarding the custody and support of minor children are not binding on the dissolution court,[33] and we noted that despite agreements to the contrary, "child support orders are always subject to review and modification."[34]

---

[30] *Id.* at 568-69, 611 N.W.2d at 90, citing *Hoshor v. Hoshor*, 254 Neb. 743, 580 N.W.2d 516 (1998); *Pascale v. Pascale*, 229 Neb. 49, 424 N.W.2d 890 (1988); *Colson v. Colson*, 215 Neb. 452, 339 N.W.2d 280 (1983); and *Klabunde v. Klabunde*, 194 Neb. 681, 234 N.W.2d 837 (1975).

[31] See § 42-366.

[32] *Reinsch, supra* note 2, 259 Neb. at 568, 611 N.W.2d at 90, citing *Prochazka v. Prochazka*, 198 Neb. 525, 253 N.W.2d 407 (1977).

[33] § 42-366(2) (expressly excepting "terms providing for the support and custody of minor children" from rule that provisions of property settlement agreement shall be binding on court absent unconscionability).

[34] *Reinsch, supra* note 2, 259 Neb. at 568, 611 N.W.2d at 90. See, also, § 42-366(7) ("[e]xcept for terms concerning the custody or support of minor children, the decree may expressly preclude or limit modification of terms set forth in the decree").

[10] *Reinsch* makes clear that the higher fraud or gross inequity standard is inapplicable to actions involving modification of child support, even when such support was part of a voluntary property settlement agreement approved by the court and incorporated into the decree.[35]

Kroll seeks to avoid the holding in *Reinsch* by arguing that the provisions regarding allocation of school tuition expenses and college savings contributions are "outside of traditional [c]hild support related expenses."[36] She argues, without citation, that provisions "relating to tuition and college expenses"[37] are not properly characterized as child support. Our cases support the opposite conclusion.

In *Caniglia v. Caniglia*,[38] a dissolution decree required the father to be responsible for paying monthly child support and half of the "extracurricular activities, education . . . and other extraordinary expenses" of the minor child. When the father lost his job, he moved to modify both his monthly child support obligation and his obligation to pay half of the other child-related expenses. The mother contended only the award of monthly child support was modifiable, and we rejected her argument. In doing so, we noted that § 42-364.17 requires divorce and paternity decrees to incorporate provisions addressing responsibility for certain child-related expenses, including "'medical, dental, and eye care, medical reimbursements, day care, extracurricular activity, education, and other extraordinary expenses of the child and calculation of child support obligations.'"[39] We specifically held that provisions in a dissolution decree related to child-related expenses listed in § 42-364.17 are modifiable when there has been a material change in circumstances, reasoning that such expenses "are

---

[35] *Reinsch, supra* note 2.

[36] Brief for appellant at 9.

[37] *Id.* at 10.

[38] *Caniglia v. Caniglia*, 285 Neb. 930, 932, 830 N.W.2d 207, 210 (2013).

[39] *Id.* at 933, 830 N.W.2d at 211.

merely an incident of the parents' responsibility to support their child"[40] and are a "subset of child support."[41] *Caniglia* found "no persuasive reason"[42] for treating the modification of child-related expenses any differently than other provisions relating to children.

In *Lenz v. Lenz*,[43] the parties' minor child had profound hearing loss, and a provision in the dissolution decree required the father to pay "'all of the expenses for the minor child's special schooling.'" When the father failed to pay, the mother brought an action to modify and enforce the decree. We characterized the obligation to pay for special schooling as an expense "in the nature of child support," which could be modified prospectively, but not retrospectively.[44]

In *Coffey v. Coffey*,[45] the dissolution decree referenced two bank accounts the parties had established for the minor children. It awarded the father control of one account and the mother control of the other. It directed the funds to be used primarily for the children's college education, but it allowed them to be used for extraordinary medical expenses or parochial high school tuition expenses if needed. The mother subsequently brought a complaint to modify custody, and the court changed the custody arrangement from joint custody to primary physical custody with the father. In doing so, it also modified child support and gave the father control of both accounts.

On appeal, the mother claimed the court erred in modifying control of these accounts because the issue of their ownership was not placed at issue by the parties' pleadings. The Nebraska Court of Appeals disagreed, reasoning:

---

[40] *Id.* at 931, 830 N.W.2d at 210.

[41] *Id.* at 935, 830 N.W.2d at 212.

[42] *Id.* at 936, 830 N.W.2d at 212.

[43] *Lenz v. Lenz*, 222 Neb. 85, 85, 382 N.W.2d 323, 324-25 (1986).

[44] *Id.* at 88, 382 N.W.2d at 326.

[45] *Coffey v. Coffey*, 11 Neb. App. 788, 661 N.W.2d 327 (2003).

> The control of these accounts, as provided for in the decree, was closely related to the joint custody arrangement and child support provisions therein, as opposed to being part of the distribution of real and personal property. By the parties' petitions to modify, the parties placed the custody and support of their children as issues before the trial court. Given that the trial court awarded custody of the children to [the father], we find no error in the portion of the order of modification granting [him] control of the children's accounts.[46]

*Coffey* thus suggests that provisions in a decree regarding financial accounts intended to provide for the educational expense of minor children are properly characterized as support and are modifiable based upon a material change in circumstances.

[11] The reasoning in *Caniglia*, *Lenz*, and *Coffey* demonstrates that the provisions at issue here, which allocated school tuition expenses for the minor children and required contributions to the children's college savings accounts, pertain to the support of the minor children.[47] And when provisions pertain to the support of minor children, they are properly characterized as child support for purposes of the legal standard to be applied in a modification action. The fraud or gross inequity standard urged by Kroll was therefore inapplicable, and the district court correctly determined the support provisions were modifiable upon a showing of a material change in circumstances affecting the best interests of the children.[48]

### 3. Carlson v. Carlson
#### Inapplicable

Lastly, Kroll argues that our recent opinion in *Carlson v. Carlson*[49] required application of the fraud or gross inequity

---

[46] *Id.* at 815, 661 N.W.2d at 350-51.

[47] See, *Caniglia, supra* note 38; *Lenz, supra* note 43; *Coffey, supra* note 45.

[48] See, *State on behalf of Tina K., supra* note 6; *Whilde, supra* note 4.

[49] *Carlson, supra* note 1.

standard to the modification in this case. But as we explain, the rule announced in *Carlson* has no application to the modification of provisions regarding the support of minor children.

In *Carlson*, the parties entered into a property settlement agreement that divided marital property, established custody and support of the minor children, and required the father to pay monthly child support beyond the age of majority so long as the child was attending college. The property settlement agreement was approved by the court and incorporated into the decree. When the father later sought to modify the post-majority child support provision, it was a question of first impression whether such a provision could be modified and, if so, what standard to apply.

The father in *Carlson* urged that the provision to pay post-majority support should be characterized as "child support"[50] and therefore was subject to modification upon showing a material change in circumstances.[51] We disagreed, reasoning that such a provision did not pertain at all to the support of minor children, but, rather, pertained to the support of adult children. We noted that absent agreement of the parties, a dissolution court in Nebraska cannot order payment of child support beyond the age of majority, but can enforce such provisions if contained in an approved property settlement agreement incorporated into a decree.[52] Agreeing with the general consensus from other jurisdictions, *Carlson* ultimately held that a provision obligating a parent to pay post-majority child support could be modified, but not upon a showing of a material change in circumstances. Instead, *Carlson* held that when modifications to property settlement agreements do not pertain to the custody or support of minor children, they are governed either by the modification standard set out in the

---

[50] *Id.* at 542, 909 N.W.2d at 362.

[51] See, e.g., *Tilson, supra* note 4.

[52] *Carlson, supra* note 1. See, *Foster v. Foster*, 266 Neb. 32, 662 N.W.2d 191 (2003); *Zetterman v. Zetterman*, 245 Neb. 255, 512 N.W.2d 622 (1994).

property settlement agreement or, if the agreement contains no such standard, by the general standard under Nebraska law for modifying provisions in a property settlement agreement.[53]

We adhere to the rule announced in *Carlson* as it regards post-majority support, but find it has no application here. Unlike the post-majority support provisions in *Carlson*, the provisions allocating responsibility for primary and secondary school tuition and requiring contributions to college savings funds during the children's minority related exclusively to the support of minor children. As such, the district court applied the correct legal standard when it concluded the support provisions were modifiable upon finding a material change in circumstances.[54]

## V. CONCLUSION

For the foregoing reasons, the district court's modification order is affirmed.

AFFIRMED.

---

[53] *Carlson, supra* note 1.

[54] See, *State on behalf of Tina K., supra* note 6; *Whilde, supra* note 4.