IN THE NEBRASKA COURT OF APPEALS

**MEMORANDUM OPINION AND JUDGMENT ON APPEAL**
**(Memorandum Web Opinion)**

SEIZYS V. SEIZYS

NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).

KIMBERLY A. SEIZYS, APPELLEE,

V.

DAVID A. SEIZYS, APPELLANT.

Filed April 20, 2021.    No. A-20-661.

Appeal from the District Court for Lancaster County: DARLA S. IDEUS, Judge. Affirmed.

Terry K. Barber, of Barber & Barber, P.C., L.L.O., for appellant.

Donald H. Bowman and Terri M. Weeks, of Bowman & Krieger, for appellee.

PIRTLE, Chief Judge, and MOORE and BISHOP, Judges.

BISHOP, Judge.

## I. INTRODUCTION

David A. Seizys appeals from an order of the Lancaster County District Court denying his complaint to modify the March 2017 decree dissolving his marriage to Kimberly A. Seizys. David sought a change in custody of the parties' son, which the court denied. We affirm.

## II. BACKGROUND

### 1. MARCH 2017 DECREE

David and Kimberly were married on August 12, 1994. Three children were born to the marriage: two daughters, one born in 1998 and another in 2000; and Anthony, born in 2004. The marriage was dissolved by consent decree on March 20, 2017. The decree adopted the parties' agreement and approved the parties' parenting plan, which gave Kimberly legal and physical custody of the parties' three children subject to David's parenting time. The parenting plan provided that Kimberly would have the children for 10 days, followed by David having the

- 1 -

children 4 days, in each 14-day period. The parenting plan also included a holiday and summer parenting time schedule and required the parties to "make every effort to minimize the exposure of the minor child to parental conflict." The decree further required David to pay child support and alimony.

### 2. DECEMBER 2019 COMPLAINT FOR MODIFICATION

David filed a "Complaint for Modification" on December 23, 2019, seeking to modify custody, child support, and alimony. In that complaint, he referenced having filed a previous modification complaint which he voluntarily dismissed. Kimberly's answer reflected that David's previous modification complaint was filed in May 2018 "seeking joint custody" of Anthony, but she agreed that the complaint was voluntarily dismissed by David, and an order dismissing the complaint was entered in June 2019. By the time David filed the present complaint, the parties' two daughters had attained the age of majority; therefore, only Anthony's custody was at issue. David alleged that "[m]aterial and substantial changes in circumstances" had occurred since the March 2017 decree in that (1) he "had virtually no parenting time . . . from the time of the 2017 Decree" with the parties' daughters due to Kimberly's conduct, (2) Kimberly had gone from part-time work to full-time work, and (3) the Nebraska Supreme Court decided *State on behalf of Kaaden S. v. Jeffery T.*, 303 Neb. 933, 932 N.W.2d 692 (2019). David claimed that it was "in the best interests of the parties' minor son to either be placed in the legal and physical custody of [David], or, at a minimum, to spend equal parenting time with each of the parties, and for the parties to have joint legal and physical custody of their minor son."

In her answer, Kimberly responded that there had been no material change in circumstances since the entry of the March 2017 decree. She alleged that David's lack of parenting time with their daughters "was as a direct result of [David's] indecent behavior and conduct, and had nothing to do with interference by [Kimberly]." Kimberly also claimed that David had "continually harassed [her] concerning changes in the Decree" that he wanted, "including texts and emails on a continual basis relating to parenting time and custody." She sought dismissal of the complaint and an award of attorney fees.

In their briefs on appeal, the parties reference that David filed a "Motion for Temporary Parenting Time" on December 23, 2019, and that such motion was denied by the district court in an order entered on January 10, 2020. However, neither David's motion nor the district court's corresponding order appear in the transcript before this court.

Trial took place on June 24, 2020, at which time the parties offered witness testimony and other evidence to the district court. David, Kimberly, and their oldest daughter testified. Anthony, age 15 at the time, also testified, but only with the judge and attorneys present. The court directed, and the attorneys agreed, that Anthony's testimony was to be kept confidential and was not to be shared with his parents. We set forth details of the evidence provided at trial later in our analysis as pertinent to the issues on appeal.

The district court entered an "Order Denying Complaint to Modify" on August 12, 2020. Although the court found a material change of circumstances had occurred, it made it clear that its finding was not based upon the Nebraska Supreme Court's decision in *State on behalf of Kaaden S. v. Jeffery T., supra*, or David's allegation that Kimberly interfered with his parenting time with the parties' daughters. While not pled by David in his complaint, the district court nevertheless

determined that "[e]vidence as to Anthony's wishes was offered at trial and neither party was surprised by that evidence," and thus the court considered Anthony's wishes in its analysis of whether a material change in circumstances had occurred. The court determined that David "met his burden of proof that a material change in circumstances has occurred since entry of the dissolution in that Anthony is older, he desires to spend more time with David, and Kimberly's work schedule has changed."

The district court "found Anthony to be an articulate and mature fifteen year old who has a good relationship with both of his parents." The court indicated that there was "no doubt both parents love Anthony; both have a strong parent/child relationship with him; and both want what is best for Anthony." The court described Anthony as a good student and athlete who "is mature, articulate, and responsible" with "a strong bond with both parents." However, the court also noted there was "no doubt the parties do not get along," describing the difficulties and stress caused by "the ongoing conflict" between David and Kimberly concerning David's amount of parenting time with Anthony. The court further identified that "David acknowledged discussing the subject [of equal parenting time] with Anthony" because "when [David] brings it up with Kimberly, she either tells him she wants to follow the original agreement or he gets no response."

The district court emphasized a particular instance of David communicating with Anthony about the parenting plan. In November 2019, "David texted Anthony asking . . . if he had talked to Kimberly yet about equal [parenting] time." The court described that David "told Anthony that David sent a text to Kimberly about equal [parenting] time" and then proceeded to "forward to Anthony the text message David had sent to Kimberly in its entirety" when Kimberly did not respond. As summarized by the district court, these text messages forwarded to Anthony included the following information:

- Kimberly had told David she will never go 50/50;
- David encouraged Kimberly to talk to Anthony and make the right decision based on Anthony's wishes;
- The law in Nebraska has changed and parenting time now starts at equal;
- Kimberly allowed both girls to decide whether to go with David so she should treat Anthony the same and likewise let him decide;
- David and Anthony had already discussed the logistics of a "7/7" plan with start and stop times;
- David thanked Kimberly in advance for having a conversation with Anthony, listening to Anthony, and agreeing to a "7/7" plan before going to court.

In light of this exchange and other evidence adduced at trial, the district court stated:

The court takes no issue with the substance of David's message to Kimberly. However, by sending this message to Anthony, David undermined Kimberly's authority; disrespected her opinion; suggested Anthony was being treated different than his sisters; misstated the law; suggested Kimberly was not following the law; suggested Kimberly was not doing the right thing; and implied that Kimberly refused to listen to Anthony. The bottom line is that Kimberly had responded to David and told him she would not agree to 50/50 time. Rather than accept her response and proceed to mediation and/or court, David went through Anthony to try [to] get a different response. David's actions put Anthony in the middle of parental conflict. Nonetheless, David testified that he acted appropriately and

that it was healthy for Anthony to know what was said between David and Kimberly. The court disagrees. It is inappropriate to involve Anthony in these discussions at the level David chose to involve him. Putting Anthony in the middle of parental dispute and undermining Kimberly in front of Anthony is not healthy nor does it provide for Anthony's emotional health and stability.

The district court concluded that "[m]odifying Anthony's custody to joint physical custody will only serve to increase his exposure to parental conflict as well as the opportunity for him to be placed in the middle of parental conflict" and would not be in Anthony's best interests. It added, "The court has considered the custody factors identified by statute and case law including Anthony's wishes but notes that Anthony's wishes are just one factor of many the court is required to consider." David's complaint for modification was denied.

David now appeals.

## III. ASSIGNMENTS OF ERROR

David assigns that the district court erred in (1) denying his motion for a temporary change to the parties' parenting time; and (2) denying his complaint for modification, particularly in its determination that increasing his parenting time was not in Anthony's best interests.

## IV. STANDARD OF REVIEW

Modification of a judgment or decree relating to child custody, visitation, or support is a matter entrusted to the discretion of the trial court, whose order is reviewed de novo on the record, and will be affirmed absent an abuse of discretion. *Windham v. Kroll*, 307 Neb. 947, 951 N.W.2d 744 (2020).

## V. ANALYSIS

### 1. Order Denying Motion for Temporary Parenting Time

David contends the district court erred in denying his motion for temporary parenting time. As noted earlier, that motion and the corresponding order are not contained in the record before us. Regardless, the court's denial of any motion seeking temporary relief related to parenting time has become moot as a result of the court's August 12, 2020, final order. When a permanent order relating to custody or parenting time is entered, a temporary order is rendered moot. See *Smith v. King*, 29 Neb. App. 152, 953 N.W.2d 258 (2020). See, also, *State on behalf of Pathammavong v. Pathammavong*, 268 Neb. 1, 679 N.W.2d 749 (2004) (temporary order rendered moot when permanent custody order entered); *Mann v. Rich*, 18 Neb. App. 849, 794 N.W.2d 183 (2011) (any issue relating to temporary order is moot after it is replaced by more permanent order). A moot case is one which seeks to determine a question which does not rest upon existing facts or rights, in which the issues presented are no longer alive. *Coleman v. Kahler*, 17 Neb. App. 518, 766 N.W.2d 142 (2009). Accordingly, this assigned error is moot and need not be resolved in this appeal. See *id.*

## 2. Order Denying Modification of March 2017 Decree

Prior to the modification of a child custody order, two steps of proof must be taken by the party seeking the modification. First, the party seeking modification must show a material change in circumstances, occurring after the entry of the previous custody order and affecting the best interests of the child. *Eric H. v. Ashley H.*, 302 Neb. 786, 925 N.W.2d 81 (2019). Next, the party seeking modification must prove that changing the child's custody is in the child's best interests. *Id.*

### (a) Material Change in Circumstances

A material change in circumstances has been defined as the occurrence of something that, if it had been known at the time the most recent custody order was entered, would have persuaded the court to decree differently. See *Jaeger v. Jaeger*, 307 Neb. 910, 951 N.W.2d 367 (2020). A child's stated preference, alone, will never suffice to establish a material change in circumstances. *Id*. Due consideration of a variety of factors that bear on the best interests of the child, which may include the child's wishes, will determine whether finding a material change in circumstances is justified. See *id*.

As indicated earlier, although the district court found a material change of circumstances had occurred, it made it clear that its finding was not based upon the Nebraska Supreme Court's decision in *State on behalf of Kaaden S. v. Jeffery T.*, 303 Neb. 933, 932 N.W.2d 692 (2019), or David's allegation that Kimberly interfered with his parenting time with the parties' daughters. Rather, the district court noted, "David's primary argument in support of the existence of a material change in circumstances is Anthony's wishes." While David did not plead Anthony's wishes in his complaint, the court found it appropriate to consider Anthony's wishes due to the parties' knowledge of his wishes and the presentation of such evidence at trial without surprise. The court ultimately found that "a material change in circumstances has occurred since entry of the dissolution in that Anthony is older, he desires to spend more time with David, and Kimberly's work schedule has changed." Neither party on appeal disputes this finding; we will therefore move on to consideration of Anthony's best interests.

### (b) Best Interests

As noted in the district court's August 12, 2020, order, David, at trial, withdrew his claim for sole or joint legal custody; instead, he proposed a "week-on-week-off schedule," which the court noted was "effectively a joint physical custody arrangement" and would be treated as such. Thus, the issue is whether the court abused its discretion in determining that David did not meet his burden to prove that it was in Anthony's best interests to change the existing custody arrangement and grant David's request for joint physical custody.

When deciding custody issues, the court's paramount concern is the child's best interests. *Lasu v. Lasu*, 28 Neb. App. 478, 944 N.W.2d 773 (2020). The foundation for the inquiry into the child's best interests lies in both statutory and case law. Neb. Rev. Stat. § 43-2923(6) (Reissue 2016) provides that in determining custody and parenting time arrangements:

> [T]he court shall consider the best interests of the minor child, which shall include, but not be limited to, consideration of . . . :

(a) The relationship of the minor child to each parent prior to the commencement of the action or any subsequent hearing;

(b) The desires and wishes of the minor child, if of an age of comprehension but regardless of chronological age, when such desires and wishes are based on sound reasoning;

(c) The general health, welfare, and social behavior of the minor child;

(d) Credible evidence of abuse inflicted on any family or household member. . . ; and

(e) Credible evidence of child abuse or neglect or domestic intimate partner abuse.

In addition to considering these statutory factors, our case law instructs that when making determinations as to the allocation of parenting time that is in a child's best interests, a trial court should also consider the parties' ability to communicate on issues such as transportation, homework, discipline, medical and dental appointments, and extracurricular activities. *State on behalf of Kaaden S. v. Jeffery T., supra*. Other relevant considerations include stability in the child's routine, minimalization of contact and conflict between the parents, and the general nature and health of the individual child. *Id.* No single factor is determinative, and different factors may weigh more heavily in the court's analysis, depending on the evidence presented in each case. *Jones v. Jones*, 305 Neb. 615, 941 N.W.2d 501 (2020).

Further, when considering a child's expressed wishes in a custody modification action, the Nebraska Supreme Court in *Jaeger v. Jaeger*, 307 Neb. at 920, 951 N.W.2d at 376, stated:

[W]e have specifically held that "the wishes of a child are not controlling" in determinations of child custody. Trial courts should consider a variety of factors that bear on the best interests of the child.

But "if a child is of sufficient age and has expressed an intelligent preference, the child's preference is entitled to consideration," alongside other factors. The amount of consideration will depend on the child's age and ability to give reasons for his or her preference. For example, in cases where we have given the child's stated preference significant consideration, the child was typically over 10 years old. And, . . . more consideration will be afforded where additional factors that bear on the child's best interests undergird the child's stated preferences and reasoning.

David asserts on appeal that Kimberly has acknowledged that Anthony "has been asking for more time with his father as early as late 2017" until "around the time of . . . trial on . . . June 24, 2020." Brief for appellant at 13. He further points out that Anthony has also "repeatedly expressed to David his preference to spend more time with [David] since late 2017." *Id.* David primarily contends that the district court "should have given [Anthony's] preference significant consideration." *Id.* at 14. David argues that Anthony's preference, "together with his general health and safety, . . . his strong relationship with David, David's consistent support of [Anthony's] relationship with and respect for Kimberly, Kimberly's increased hours at work, David's availability, and the stable homes and love . . . that both parents provide" established that equal parenting time between David and Kimberly was in Anthony's best interests. *Id.* In a similar vein, David also asserts that "one incident was determined [by the district court] to overwhelm all

evidence to the contrary - a text message that was sent in mid-November, 2019, from David, to [Anthony]." *Id.* at 14-15. David claims this "factor of involvement in parental conflict controlled the determination in this case" over the other "considerations which must be considered in determining the best interests of a child in determining custody . . . ." *Id.* at 16.

There is no dispute that Anthony expressed the desire to spend more time with David, and although we will not recount Anthony's testimony, we note he testified positively about his relationships with both his mother and father.

While Anthony, so far, has been able to maintain positive relationships with both parents, the ongoing conflict between David and Kimberly may adversely impact those relationships if Anthony continues to be drawn into that conflict. The record demonstrates significant familial conflict occurring both during and after the parties' marriage, stemming in part from David's infidelity with his oldest daughter's friend which contributed to the breakdown of the marriage and other familial relationships. Kimberly described that because of this conflict, she frequently did not feel safe when interacting with David because he does not "do what [she] ask[s] to help [her] feel safe." She also observed the parties' daughters had similar sentiments of not feeling safe with David. The parties' oldest daughter testified to the mental health difficulties she has struggled with as a result of David's actions and decisions during and after the marriage. She described her relationship with David as "just kind of hostile" when David and Kimberly began the divorce process. Later interactions she had with David "felt more harassive and aggressive and unsafe," leading the oldest daughter to eventually block David's attempts to communicate with her. Also, Kimberly testified that the parties' younger daughter did not "trust people" or "sleep well" after David left the marital home and she further affirmed that the younger daughter does not presently spend any time with David.

As noted by the district court, we too observe that the conflict between David and Kimberly has resulted in communication between the two being difficult and contentious, especially as the two would repeatedly reach an impasse regarding David's parenting time with Anthony. It is from this difficulty in communication that the district court expressed concern that David drew Anthony into the dispute over David's parenting time "to try [to] get a different response" from Kimberly. The district court emphasized that such involvement of Anthony and "undermining Kimberly in front of [him] is not healthy nor does it provide for Anthony's emotional health and stability."

The district court's order also addressed other testimony and evidence considered in its decision. David testified to the "great father-son relationship" he has with Anthony, describing that Anthony has "enjoy[ed] the time at [David's] house" as the two have bonded through home improvement projects, Anthony's athletics, and other mutual interests. His testimony also highlighted that he and Anthony have "good communication" and have been able to openly and honestly talk through "a lot of issues."

Conversely, Kimberly's testimony evidenced other concerns she believed weighed against increasing Anthony's time with David. She testified that during a "three to four month[]" period beginning in December 2017 where she and David agreed that David would have an extra night with Anthony, she experienced "tension and conversations with a lot of conflict" between herself and Anthony while he was with her. She further believed some of David's qualities were not the "best for [Anthony] to be influenced by," emphasizing how she saw David treat women, "discredit[] people in authority in Anthony's life," and "struggle[] with anger . . . when he is

confronted" based upon "[i]nteractions that [David] has had with his daughters." Kimberly described how she and the parties' daughters did not feel safe around David, and she likewise worried Anthony would feel that he could not "make his dad mad."

The district court thoroughly explained the backdrop of evidence in this matter and gave significant consideration to the evidence and testimony presented by both parties in its order, including the evidence of Anthony's wishes. That David's involvement of Anthony in parental conflict weighed more heavily in the court's analysis does not mean the court abused its discretion. See *Jones v. Jones, supra* (different factors may weigh more heavily in court's analysis depending on evidence presented in each case). We are also mindful that where credible evidence is in conflict on a material issue of fact, we may consider, and give weight to, the fact that the trial judge heard and observed the witnesses and accepted one version of the facts rather than another. See *Schrag v. Spear*, 290 Neb. 98, 858 N.W.2d 865 (2015). Based on our review of the record, we cannot say the district court abused its discretion in concluding David did not meet his burden to prove that it was in Anthony's best interests that the current custody arrangement should be modified to provide for joint physical custody.

For the sake of completeness, we note that in addition to David's argument that the district court did not properly evaluate Anthony's best interests, he also asserts the district court's order is "contrary to the spirit of the Supreme Court's ruling in" *State on behalf of Kaaden S. v. Jeffery T.*, 303 Neb. 933, 932 N.W.2d 692 (2019). Brief for appellant at 16. David argues that the Supreme Court's decision "implicitly endorsed" the proposition that the goal in determinations of child custody "is, in truth, always the same - equal parenting time with both parents." Brief for appellant at 17. However, the Supreme Court's holding in *State on behalf of Kaaden S. v. Jeffery T.*, *supra*, reflected that joint custody is now neither favored nor disfavored under Nebraska law. As noted by the district court, the decision did not change the factors that a court should consider when deciding custody. Nothing in the record before us demonstrates that the district court failed to consider any factors relevant to David's request to change custody.

Based on the foregoing legal principles and the record before us, we conclude the district court did not abuse its discretion in denying David's complaint to modify the March 2017 decree.

## VI. CONCLUSION

For the reasons set forth above, we affirm the district court's August 12, 2020, order.

Affirmed.